Evelyn BACH, Plaintiff,

v.

MOUNT CLEMENS GENERAL HOSPI-
TAL, INCORPORATED, a Michigan
Corporation, Dr. Gary Schirs, and Diane
Voorhess, jointly and severally, Defend-
ants.

Civ. No. 7–72203.

United States District Court,
E. D. Michigan, S. D.

March 29, 1978.

Ronald William Egnor, Ypsilanti, Mich.,
for plaintiff.

Conrad W. Kreger, Detroit, Mich., for
defendants.

OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on the
motions for summary judgment of two of
the defendants, Mount Clemens General
Hospital and Diane Voorhess. The plain-
tiff, Evelyn Bach, has filed this suit to
recover damages for dismissal from her em-
ployment allegedly in violation of her con-
stitutional rights.

Prior to her dismissal the plaintiff had
been employed by the defendant hospital

for nine years and at the time of her dismissal was the head nurse of the defendant's emergency room. Her dismissal allegedly arose from statements made by her at a meeting of the County Government Sub-Committee on Emergency Medical Services on January 19, 1976. At this meeting, the plaintiff, one of the hospital's representatives on the committee, allegedly made some derogatory remarks regarding some of the hospital's doctors. These statements were reported to the hospital's Director of Nursing, defendant Diane Voorhess, by Dr. Gary Schirs, the third defendant in this case, and a Dr. Ferris, both members of the committee. As a result of this statement, the furor it caused and other problems the plaintiff was having with her job, she was given the option of resigning or being fired by Ms. Voorhess. The plaintiff chose to resign.

She has now filed this action against the hospital and its alleged agents, Dr. Schirs and Ms. Voorhess. The plaintiff claims that because her dismissal arose from statements made by her in the exercise of her First Amendment right of free speech, her constitutional rights have been violated. The plaintiff further claims that this violation of her rights is cognizable under 42 U.S.C. § 1983 because the hospital in dismissing her was acting under the color of state law. This motion for summary judgment filed by the defendant hospital and Ms. Voorhess alleges that as a matter of law the plaintiff's dismissal was not under color of state law and the Court therefore lacks jurisdiction over the subject matter of the suit.

█ The test for determining whether a given act or the actions of an entity constitute state action is not an inflexible standard. In the landmark case of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Supreme Court stated "only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Id. at 722, 81 S.Ct. at 860.

As a result, it is important for the Court to look at the various indicia of state action claimed by the plaintiff. The first of these indicia urged by the plaintiff is that Mount Clemens General is a participant in the Macomb County Emergency Medical Services Program. This program was established by the Macomb County Board of Commissioners pursuant to M.C.L.A. § 338.-1921 et seq. The program is apparently funded by federal grants and is controlled by the Emergency Medical Services Executive Committee[1] consisting of various government officials, emergency room nurses and doctors all appointed by the Macomb County Board of Commissioners. The function of this committee is to coordinate and oversee the training certification and review of para-medics and emergency medical services throughout the county.

The committee operates independently of any hospital and does not control any hospital, including the defendant. It does, however, appear that the committee has adopted some regulations applicable to member hospitals including regulations that a physician must be on duty at all times in the emergency room and that only a physician or authorized nurse may answer emergency calls. Other than this, there appear to be few other connections between the member hospitals and the program. It is clear that a grant to the program funded the purchase of various emergency radio equipment by Mount Clemens General. Other than this the record is barren of any other grant money received by the hospital through the program. The only other apparent connection between the hospital and the program or committee appears to be the receipt by the hospital of emergency room patients serviced by the program's para-medics.

Next the plaintiff alleges that state action is shown by the fact that many of the hospital's governing board are "community leaders." In addition, the plaintiff argues

---

1. It was at a meeting of this committee that the plaintiff made the statements which led to her dismissal.

that because the hospital is a member of the Mount Clemens Area Hospital Planning and Steering Committee, composed of all hospitals in the area, it and other hospitals are a single entity imbued with a public responsibility. The plaintiff also contends that the name "Mount Clemens General Hospital" cloaks the defendant with apparent public authority.

Finally, the plaintiff points to the various economic benefits which the defendant receives or has received from various governmental entities. These are:

(1) Governmental financing of the Macomb County Area Emergency Medical Services Program.

(2) The transfer by the municipality of Mount Clemens of a portion of the land for the hospital for a $1.00 consideration.

(3) Various federal, state, and local tax exemptions.

(4) Receipt of over two million dollars (or 31.5% of the hospital's construction costs) in Hill-Burton Funds.

(5) Third party reimbursement of patients' expenses under Medicare, Medicaid and certain welfare programs.

A review of Sixth Circuit case law reveals that such factors as these have, in the past, played an important role in the determination of whether a hospital's actions constituted state action. In *Meredith v. Allen County War Memorial Hospital Com'n.,* 397 F.2d 33 (6th Cir. 1968), the Court held that a hospital's action constituted state action where the hospital's commission members were appointed by the governing body of Allen County, the hospital was the only one in the area and was financed in part by public funds. In so holding, the Court stated:

> An institution such as this, serving an important public function and financed by public funds, is sufficiently linked with the state for its acts to be subject to the limitations of the Fourteenth Amendment. *Id.* at 35.

In *Chiaffitelli v. Dettmer Hospital, Inc.,* 437 F.2d 429 (6th Cir. 1971), the Court held that where five of the defendant hospital's nine governors were responsible to the public[2] and the hospital was receiving public funds its actions constituted state action. Still later, the Court in *O'Neill v. Grayson County War Memorial Hospital,* 472 F.2d 1140 (6th Cir. 1973), held that state action had been demonstrated where: (1) the defendant hospital leased its premises from the Grayson County Fiscal Court for $1.00 per year; (2) the lease required that the board of directors of the hospital contain at least one member from each of the county's magisterial districts; (3) the lease contained provisions relating to the maintenance and operation of the hospital; (4) the lease contained a clause requiring the reversion of all of the hospital's donations to the County Fiscal Court should the hospital cease to exist; and (5) the hospital received various public funds.

Finally, in *Jackson v. Norton-Children's Hospital, Inc.,* 487 F.2d 502 (6th Cir. 1973), the Court retreated somewhat from the earlier position taken in *Meredith, supra,* by holding that the receipt of Hill-Burton funds without more did not make the actions of a hospital state action.

Although many of the factors cited by the plaintiff in this case do appear in these earlier cases, the Court is of the opinion that there is no state action in this case. One reason for the Court's opinion is that a major factor determining the existence of state action in the cases cited above is some government involvement in the administrative structure of the hospital.

Here there is no such involvement. Although the plaintiff has shown that the hospital is involved in an emergency services program with governmental connections, there is no showing that this in any way subjects the hospital to governmental control.

---

2. Four were appointed by county commissioners and the fifth was a judge of the county's common pleas court.

More important than the lack of governmental control of the hospital is the fact that the Sixth Circuit decisions relied on by the plaintiff and cited above were decided before the decision in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 447 (1974). In that case the Court shifted the emphasis of the state action doctrine. *Prior to Jackson* many courts implicitly interpreted *Burton v. Wilmington Parking Authority, supra,* as setting forth a test whereby the Court inquired into the general and sometimes unrelated connections between the state and the ostensibly private entity to determine whether that entity's actions constituted state action. The Sixth Circuit cases cited above are examples of this type of analysis. In *Jackson,* however, the Supreme Court shifted the focus of the state action test, stating:

> the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the . . . entity so that the action of the latter may be fairly treated as that of the State itself. *Id.* at 351, 95 S.Ct. at 453.

[2] As this test is applied to otherwise private hospitals, it is clear that the state must be somehow involved in the very action challenged in order for it to be considered state action. For example, in *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir. 1975), the plaintiff challenged the policy of a private hospital in not permitting elective abortions claiming that the hospital's action constituted state action. The major indicia of state action in that case were: (1) financing of the original construction costs by use of voter authorized hospital bonds and Hill-Burton funds; (2) ownership by the County of the land upon which the hospital was located; and (3) a lease of this land to the hospital at a rent of $1.00 per year. Despite these indicia of state action, the Appellate Court found for the defendant stating:

> [W]e find that Orange County is not sufficiently connected with the Orange Memorial Hospital Corporation's activities to imbue those actions with the attributes of the state. *The involvement of the County is not sufficiently related to the corporation's decision to prohibit elective abortions to justify the imposition Constitutional restrictions upon daily business of the hospital. Id.* at 882. (Emphasis added).

Thus, the question this Court must resolve is whether there is a sufficiently close connection between the state and the dismissal of Ms. Bach so that the latter may be fairly termed the action of the state. All of the factors set forth above and relied on by the plaintiff are insufficient to establish this connection. These factors merely show some general involvement of various governmental entities with an otherwise private hospital. They do not indicate any connection between any governmental entity and the activity being challenged, the dismissal of the plaintiff, which would lead the Court to conclude that the firing could be attributed to the state.

In fact, the record clearly indicates that a contrary conclusion must be reached. The defendant, Mount Clemens General Hospital, is a private non-profit corporation organized under the laws of the State of Michigan. The physical assets of Mount Clemens are not owned by any governmental entity. Nor does any governmental entity participate in any of the employment or personnel decisions of the hospital except insofar as the hospital's personnel policies are regulated by statutes applicable to all private employers. Furthermore, the affidavit of Mr. Charles Warren, the Administrator and Chief Executive Officer of the hospital, discloses that the personnel action in question in this case was in no way the result of any action taken by any governmental entity.

The only connection between a governmental entity and the facts surrounding the dismissal is that the statements which allegedly led to the dismissal were made at a meeting of the Macomb County Emergency Medical Services Executive Committee of which the plaintiff was a member. However, even if the Court were to assume that this committee is a quasi-governmental

body and that the funds for the emergency medical services program come from the federal government, it is clear that the plaintiff is still unable to show that her dismissal constituted state action. With the exception of a few minor details relating to emergency room procedures, there is absolutely no evidence that this committee exercises any control over the defendant hospital. Nor is there any evidence that the hospital has received any monetary benefit from the program aside from radio equipment used to answer emergency calls.

Furthermore, there is no showing that the Committee in any way influenced the hospital's or Ms. Voorhess' actions with respect to Ms. Bach. It is clear that the statements made by Ms. Bach were reported to the defendant Voorhess by Dr. Schirs the third defendant in this case, and Dr. Ferris, both members of the Committee. There is, however, no evidence that either of these doctors requested that Ms. Bach be dismissed. In fact, the plaintiff does not even make allegations to this effect in her complaint or brief. Furthermore, it is clear Dr. Schirs and Dr. Ferris only practiced medicine at Mount Clemens and were not even so much as employees of the hospital. Therefore, even had they requested that Ms. Bach be dismissed, it is doubtful that they had the power to compel compliance by the hospital.

The record clearly shows that the decision to fire Ms. Bach was that of the defendant Voorhess and was based in part on factors other than the alleged statement. The record also demonstrates that the action was that of a purely private entity uninfluenced by any government ties. Based on the above, the Court cannot conclude that the dismissal of Ms. Bach is so closely connected with the state, that it may be fairly termed the action of the state. *See Jackson, supra.*

For the reasons stated above, the Court grants the motion for summary judgment of the defendants Mount Clemens General Hospital and Diane Voorhess.

Although no motion for dismissal or summary judgment has been filed by the defendant Dr. Schirs, the Court dismisses the

action as to him for the same reasons stated above with respect to the other defendants.

Appropriate orders shall be submitted.