Judith **MARENTETTE** et al, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**MICHIGAN HOST, INC.,** Host International, Inc., Wayne County Road Commission, County of Wayne, Defendants.

Civ. A. No. 79–70112.

United States District Court, E. D. Michigan, S. D.

Sept. 12, 1980.

Jan C. Leventer, Women's Justice Center, Detroit, Mich., Monica Farris Linkner, Southfield, Mich., and Edward J. Kaniewski, Dearborn Heights, Mich., for plaintiffs.

Robert M. Vercruysse & Donald B. Miller, Detroit, Mich., and John McCann, Detroit, Mich., for defendants.

### MEMORANDUM OPINION GRANTING DEFENDANTS' MOTIONS TO DISMISS

JULIAN ABELE COOK, Jr., District Judge.

Presently before the Court are Motions to Dismiss which have been previously filed by the Defendants, Michigan Host and Host International, Inc., and the Defendant, Wayne County Road Commission. Plaintiffs have responded to those Motions, and seek a denial of the relief sought by the several Defendants. Subsequent to this Court's announcement that it would treat these Motions as Motions for Summary Judgment, both sides filed supplemental pleadings in support of, and in opposition to, Summary Judgment.

### Class Certification

When Plaintiffs filed this lawsuit on January 15, 1979, the original Complaint asked the Court to certify a class pursuant to Rule 23(a) and 23(b)(2) & (3) of the Fed.R.Civ.P. With full recognition that some of the originally-named Plaintiffs have been dismissed from this action, pursuant to a Stipulation and Order, this Court does hereby certify a class consisting of the cocktail waitresses and the restaurant waitresses pursuant to Rule 23(b)(2) which authorizes class actions for injunctive or declaratory relief.

### Count I

Count I of Plaintiffs' First Amended Complaint alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. This Count alleges that the uniforms which the Plaintiffs were required to wear subjected them to verbal and physical sexual harassment, as well as to insults and taunts, from customers. The Complaint (as amended) further claims that, while the Defendant, Michigan Host, and Defendant, Host International, have been made aware of the sexual harassment, neither of them have taken any corrective action. Moreover, this Count alleges that male employees, by contrast, are not required to wear similarly revealing and sexually suggestive costumes. Further, Plaintiffs claim that these costumes subjected them to physical discomfort and made them susceptible to colds. Claiming that the uniforms are not related to any proper job purpose, they seek injunctive relief and ask the Court, pursuant to Title VII, to award

damages and costs against the corporate Defendants as compensation for the discriminatory conditions of employment under which they were required to work.

Both sides, in their Motions for, and in opposition to, the Motion for Preliminary Injunction, and in their briefs in support of, and in opposition to, the Motions to Dismiss and Motions for Summary Judgment, have extensively and exhaustively briefed Title VII law as it applies to grooming codes, to dress codes and to sex discrimination. The Plaintiffs take the position that Title VII intends to encompass this type of action. Plaintiffs have recently provided the Court with the case of *Equal Opportunity Commission and Margaret Hasselman v. Sage Realty Corporation, Inc., et al,* 80 F.R.D. 365 from the Federal District Court in the Southern District of New York where, on June 6, 1980, District Judge Ward determined that the provocative and revealing bicentennial uniform which Plaintiff Hasselman was required to wear, coupled with the termination of her employment, raised factual issues as to whether or not Plaintiff had made a prima facie showing of sex discrimination. Importantly, that Court disagreed with the Defendants' reliance on the grooming cases for the principal that uniform requirements do not involve discrimination based on sex. The District Judge held that the grooming cases and the haircut cases merely hold that nothing in Title VII prohibits an employer from making reasonable employment decisions based on factors such as grooming and dress. At the same time, the Judge found questions of fact as to the reasonableness of the bicentennial uniform worn by Plaintiff Hasselman. Additionally, there were other fact issues remaining on that record. Nonetheless, that Court did distinguish the grooming cases from the case then pending before him, and refused to summarily dismiss Ms. Hasselman's Complaint prior to resolution of the fact issues.

Throughout this litigation, the Defendants have relied upon what is often referred to as "haircut and grooming cases," as well as the theory of those cases as set forth in *Willingham v. Macon Telegraph Publishing Company,* 507 F.2d 1084 (5th Cir. 1975) where the Court said at pp. 1091–1092:

> A line must be drawn between distinctions grounded on such fundamental rights as the right to have children or to marry and those interfering with the manner in which an employer exercises his judgment as to the way to operate a business. Hair length is not immutable, and in the situation of employer vis-a-vis employee enjoys no constitutional protection. If the employee objects to the grooming code, he has the right to reject it by looking elsewhere for employment, or, alternatively, he may choose to subordinate his preference by accepting the code along with the job. We adopt the view, therefore, that distinctions in employment practices between men and women on the basis of something other than immutable or protected characteristics do not inhibit employment opportunities in violation of Section 703(a). Congress sought only to give all persons equal access to the job market, not to limit an employer's right to exercise his informed judgment as to how best to run his shop.

As the Defendant has pointed out, most Circuits and, indeed, the Sixth Circuit in *Barker v. Taft Broadcasting Company,* 549 F.2d 400 (6th Cir. 1977), have agreed with the Fifth Circuit's *Willingham* decision that dress codes imposed by employers which do not interfere with one's ability to gain employment or to advance equally with members of the other sex, do not violate Title VII.

■ It is not necessary for this Court to discuss the many cases cited in opposition to, and in support of, the present Motions. This Court is in essential agreement with Judge Ward of the Southern District of New York that there is a difference between reasonable employment decisions based on factors such as grooming and dress, and unreasonable ones. He rejected the Summary Judgment Motion because it was felt that there was a fact issue as to the reasonableness of the dress require-

ments imposed. This Court, in theory agrees with the Plaintiffs' position here and the District Judge in the *Hasselman* case. The Court believes that some form of dress code could violate and, thus, fall within the provisions of Title VII. The Court believes that a sexually provocative dress code imposed as a condition of employment which subjects persons to sexual harassment could well violate the true spirit and the literal language of Title VII. But, the Court also believes that the Plaintiffs, as well as the Defendants, have overlooked the real and fundamental problem with Plaintiffs' Title VII cause of action.

In the case of *Equal Employment Opportunity Commission v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir. 1975), reversed on other grounds, the Sixth Circuit held:

The relief provisions of Title VII contained in Section 706(g) of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000(e) ... do not specifically authorize an award of either compensatory or punitive damages for discrimination in employment practices. Back pay in Title VII cases is considered a form of restitution, not an award of damages. Since restitution is an equitable remedy a jury is not required for the award of back pay... We find no authority in the quoted language for the award of punitive damages is equitable relief. The catch-all phrase other equitable relief as the Court deems appropriate does not stand alone. It is limited under the construction doctrine of *ejusdem generis*, to relief of the same kind as that specifically enumerated. While affirmative action may not be limited to the reinstatement or hiring of employees with or without back pay, we believe that it is limited to relief of the same general kind, that is, equitable relief in the form of restitution. In the *Howard* [v. *Lockheed-Georgia Co., 372 F.Supp. 854 (N.D.Ga.1974)*] case, the Court found that Congress would have made clear any intention to authorize compensatory and punitive damages in Title VII cases.

515 F.2d at 308, 309.

Likewise, in *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192 (6th

Cir. 1978), the Sixth Circuit Court wrote as follows:

There is no direct Supreme Court authority and surprisingly little authority among the circuits on the question of whether compensatory damages in addition to any back pay can be awarded in a Title VII action. In *Equal Employment Opportunity Commission v. Detroit Edison* (citing case) our Court held that punitive damages were not recoverable under Title VII. The same logic which in *Detroit Edison* supported the denial of punitive damages applies equally to compensatory damages.

The Court went on to say:

After examining the lengthy legislative history of Title VII, in addition to the briefer history surrounding the 1972 amendments, this Court finds that Congress, when it drew up that part of the statute dealing with remedies for unlawful employment practices, had in mind a wide panorama of equitable tools the Courts might use but did not intend the Courts would punish Defendants by imposing upon them large money awards in the form of compensatory or punitive damages... Accordingly, we hold that compensatory damages of the type awarded here are not authorized under Section 706(g) of Title VII.

585 F.2d 194–197.

When Plaintiffs were first before this Court with their original Complaint, seeking a Preliminary Injunction, the relief that they were requesting at that time (namely, injunctive relief) was, in the opinion of this Court, a proper remedy for a Title VII violation. Likewise, as the cases which have been cited by this Court state, "back pay" is an appropriate remedy for a violation of Title VII. However, in this case, the Motion for Preliminary Injunction was never ruled upon by this Court because it became, and remains, moot. The second form of relief associated with Title VII Complaints ["back pay"] has not been sought in Count I of Plaintiffs' Amended

Complaint. In Paragraph 28, Plaintiffs pled:

On January 11, the corporate defendants meeted out a spurious and unwarranted three day suspension (later reduced to one day) to Plaintiff Slayton. This suspension was imposed on Plaintiff Slayton, *inter alia,* because of her assertion of her civil rights in this action. Subsequently, Plaintiff Slayton has been subjected to harassment by the corporate defendants and their agents, *inter alia,* because of her assertion of her civil rights in this action.

The Court notes, however, that in the Plaintiffs' prayer for relief on Count I, there is no specific request for back pay as to Plaintiff Slayton—or for any other Plaintiff. Thus, this Court must assume that, while a suspension occurred, there was not a loss of pay for that one day time period. Accordingly, while the Court finds itself in agreement with the statements and the language of the very recent *Hasselman* decision, and while the Court finds itself in agreement that there could be dress codes imposed by employers that would violate Title VII's intent and spirit, and without reaching the issue of whether Plaintiffs could, in fact, show that the particular dress code imposed upon them contravened the Civil Rights Act of 1964, the Court determines that Plaintiffs' Title VII cause of action must be dismissed as moot for the reasons that injunctive relief is no longer necessary and that back pay is not a part of Plaintiffs' request. The compensatory and other relief which the Plaintiffs seek under this Count are not proper forms of relief for a cause of action pursuant to § 706(g) of the Civil Rights Act of 1964. Accordingly, Plaintiffs' cause of action, founded upon Title VII of the 1964 Civil Rights Act, shall be, and is, dismissed for the reasons that the relief prayed for therein are outside the reaches of Title VII relief.

### Count II

In Count II of the Plaintiffs' First Amended Complaint, Plaintiffs allege violation of their equal protection rights, pursuant to the Fourteenth Amendment and 42 U.S.C.A. § 1983. This Count, unlike Count I, is pled against the corporate Defendant, and the Wayne County Road Commission. Count II alleges that the contractual relationship between the parties, as well as the symbiotic relationship between them, subjects the Wayne County Road Commission to § 1983 liability. The Plaintiffs claim that by failing to remedy the uniform and shoe requirements imposed upon the Plaintiffs, the Wayne County Road Commission has violated their rights under the equal protection clause of the Fourteenth Amendment and under 42 U.S.C.A. § 1983. They seek injunctive relief and compensatory damages in the sum of $10,000.00 per person, plus attorneys fees and other appropriate relief.

From the outset, the Defendants have asserted that this cause of action should be dismissed because of the failure by the Plaintiffs to establish that the discrimination which they allege occurred "under color of state law." While there are, indeed, technical differences between a showing of "under color of state law" under the Fourteenth Amendment and under § 1983, the Court will, nevertheless, discuss them together. The Defendants have continuously cited the case of *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) where the United States Supreme Court stated that there must be a "sufficiently close connection between the challenged action and the involvement of the state" before it could be concluded that the Fourteenth Amendment had been violated. Affidavits presented to this Court by the Airport Superintendent of the Board of County Road Commissioners state that the Board has no involvement whatsoever with the costume policy adopted by Host. Additionally, Host states that the Defendant, Wayne County Road Commission, neither influences nor affects its policies with its employees in any manner. Both Defendants claim that they exist in a simple landlord-tenant relationship. There have been no Counter-Affidavits which refute, or tend to refute, this position.

914

The Court is well aware that the comparatively recent *Monell v. Department of Social Services of the City of New York* decision, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), allows municipalities to be sued under 42 U.S.C.A. § 1983 when the policies or practices in which they had some part in implementing violate the Constitution. The Defendants rely upon *Monell* in support of their position that, even if sufficient state action was found to exist, the Plaintiffs would have to rely upon the theory of *respondeat superior*—a doctrine which *Monell* clearly finds inappropriate under § 1983 claims.

But, the Plaintiffs have not advanced a *respondeat superior* theory. They claim that a symbiotic relationship between the landlord and the tenant exists here. They rely primarily upon *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The Defendants contend that the *Jackson* case cuts away and limits the *Burton v. Wilmington Parking Authority* test. And, in support of this position, the Defendants cite *Bach v. Mount Clemens General Hospital*, 448 F.Supp. 686 (E.D.Mich.1978), where Judge Feikens of this Court applied the *Jackson*, rather than the *Burton*, test. This Court must also note the decision of *Moose Lodge No. 17 v. Ervis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), where a private restaurant which had been granted a liquor license by the State of Pennsylvania—that liquor license being the alleged state action—was found not to have violated the Plaintiff's Fourteenth Amendment rights, for the reason that the regulatory scheme enforced by the Pennsylvania Liquor Control Board did not sufficiently implicate the state in this discriminatory guest policies of private *Moose Lodge*. The Defendants have also cited a thoughtful Third Circuit case, *Braden v. University of Pittsburgh*, 552 F.2d 948 (3rd Cir. 1977), where the Court analyzed the *Burton* test, the *Moose Lodge* Standard and the *Jackson* test very carefully. Most importantly, the Court wrote:

As a result, it is not at all apparent that the dispositive factor in *Burton* ... was the extent and nature of the overall relationship between the state agency and the private enterprise.

552 F.2d at 957.

This language from the *Braden* case is important because *Burton* has been cited by Plaintiffs and is, indeed, cited by many as standing for a general "overall relationship" test of general applicability. The *Braden* Court and, indeed, the many Courts subsequent to *Burton* have not interpreted *Burton* in such a broad manner, but instead have realized that the *Burton* test requires a nexus between the state and the very activity that is being challenged.

■ Thus, even though the parking authority in the *Burton v. Wilmington Parking Authority* case was public, as the airport is in this instance, and was built in part by public funds as no doubt the airport was in this case, the Court does not agree that with the Plaintiff that the *Burton* test necessarily applies here because of that reason. *Burton* is not an overall general test. It was limited to its facts. Upon reading the affidavits and the pleadings in this case, the Court does not find sufficient state action. Moreover, the Court believes that the nexus test of *Jackson v. Metropolitan Edison* is the proper test. Accordingly, the Court dismisses the Plaintiffs' second cause of action as set forth in Count II, brought pursuant to the Fourteenth Amendment and 42 U.S.C.A. § 1983.

*Counts III and IV*

These Counts have been briefed by the parties. However, inasmuch as the Court has dismissed Count I for mootness and Count II for lack of sufficient showing of state action, the state claims cannot remain in this forum. Accordingly, in accordance with the above rulings, this case shall be, and is, dismissed.