HAHNKE v BALL

1. Witnesses—Competence—Right to Cross-Examination—Evidence—Automobiles—Speed of Automobiles—Skid Marks.

A defendant's right to cross-examine witnesses was denied by the admission of testimony of a witness as to the speed of the defendant's automobile prior to a collision, where the testimony was based on a police department chart used to determine the speed on the basis of skid marks, and the necessary calculations were made at the scene by another police officer, and where the testifying officer could not vouch for the accuracy or veracity of the chart or the methodology used.

2. Evidence—Hearsay—Witnesses—Credibility.

Testimony was hearsay evidence where it called for a conclusion on the part of the testifying witness, and depended in part for its credibility on the veracity and competency of another person.

3. Evidence—Hearsay—Negligence—Speed of Automobiles—Prejudicial Error.

Admission of hearsay testimony in an automobile negligence case as to the speed of a defendant's automobile immediately prior to a collision with a motorcycle resulted in prejudicial and not harmless error where this was the only testimony presented showing that the speed was as much as 50–55 miles per hour.

4. Evidence—Expert Opinion Evidence—Automobiles—Negligence—Speed of Automobiles—Point of Impact—Skid Marks—Prejudicial Error.

An expert may render an opinion concerning the point of impact of an accident and the speed of vehicles as based upon skid marks, but prejudicial error results where the testifying officer is inexperienced in this field and the opinion is substantially

---

References for Points in Headnotes

[1, 3, 4] 7 Am Jur 2d, Automobile and Highway Traffic §§ 180–193; 8 Am Jur 2d, Automobiles and Highway Traffic §§ 716–722.

[2] 29 Am Jur 2d, Evidence §§ 493–497.

[5] 22 Am Jur 2d, Damages §§ 345–362.

that of another fellow officer who may well have been highly experienced in the field but who did not testify.

5. DAMAGES—AUTOMOBILES—JURY—INSTRUCTIONS TO JURY—ELEMENTS OF DAMAGE—SPECULATION AS TO AMOUNT—APPEAL AND ERROR.

An instruction to the jury in an automobile-motorcycle accident case that reasonable expenses for travel to and from trial and property damage to a motorcycle were proper elements of damages was erroneous and mandates a reversal where there was no evidence introduced as to any costs incurred pursuant to traveling to and from trial, the motorcycle damaged was not the property of the plaintiff, and the Court of Appeals is unable to speculate as to the amount which the jury may have awarded for these items.

Appeal from Wayne, Peter B. Spivak, J. Submitted Division 1 February 12, 1975, at Detroit. (Docket No. 18456.) Decided April 7, 1975.

Complaint by John R. Hahnke against Madeline M. Ball for damages resulting from an automobile-motorcycle accident. Judgment for plaintiff. Defendant appeals. Reversed.

*Hibbs, Lewis & Berg, P. C.,* for plaintiff.

*Willans, Frisbee & Ryal* (by *Daniel Zolkower),* for defendant.

Before: D. E. HOLBROOK, P. J., and DANHOF and N. J. KAUFMAN, JJ.

D. E. HOLBROOK, P. J. On the night of August 24, 1971,[1] plaintiff, a former Michigan resident who

---

[1] Plaintiff testified at trial that he had come to Michigan in August 1971 to visit relatives, having driven his own motorcycle from Arizona to Champaign, Illinois. In Champaign plaintiff's motorcycle had broken down, so plaintiff's brother drove to Champaign and brought plaintiff the remaining distance to the Detroit area. Plaintiff stayed in Michigan until January 1, 1972, when he took an airplane back to Arizona. In February of 1972, plaintiff flew to Michigan to pick up his motorcycle, which he took back with him on the return flight to

was residing in Arizona, was operating a motorcycle, owned by a friend of his, in the City of Taylor, Michigan. Plaintiff was on his way to visit his aunt, whose home was on Beech-Daly Road. Plaintiff stopped his vehicle, put his left foot down, extended his left arm, and waited for traffic to clear so that he could make a left turn into his aunt's driveway. Thereafter, plaintiff heard a horn blow, turned around and was struck from the rear by an automobile owned and operated by defendant, who had also been traveling in a northerly direction on Beech-Daly Road. Defendant variously testified that she could have been traveling at speeds of 35 to 45 miles per hour just prior to the accident.

Plaintiff filed the instant action, alleging that defendant's negligence in operating her vehicle had been the proximate cause of "orthopedic, neurological, physiological and psychological" injuries to plaintiff, forcing him to incur medical expenses and causing him pain and suffering, and praying for damages in the amount of $50,000. Defendant denied any negligence on her part and affirmatively alleged contributory negligence on plaintiff's part. Both parties demanded a jury trial.

Plaintiff called as his witness a police officer who had been at the scene of the accident. The officer testified that he had measured skid marks of 150 feet. Plaintiff's counsel introduced into evidence a page from the Secretary of State's booklet, "What Every Driver Should Know", on speed and stopping distances, over the objection of defense counsel. The officer was allowed to testify as to computation of speed based upon the skid marks. This testimony was based upon a police department

Arizona. Apparently plaintiff came from Arizona to Michigan for the trial of the instant case.

chart which was used to determine estimated speeds. This chart was not introduced into evidence. The police officer testified that he was present during the computation after the accident and had been instructed on the morning of the day of his testimony as to the use of this chart. He was allowed to testify as to the computed speeds found on the accident report and on that morning, stating that the two were similar, being between 50 and 55 miles per hour. When questioned by the court and both counsel, as to the formula used, the following occurred:

"*Q. (by Mr. Berg, plaintiff's counsel).* Well, it is possible then, that you can compute from the skid marks involved in this particular accident, which you measured, the speed of the vehicle involved?

"*A.* No, sir.

"*Q.* Are you able to do that?

"*A.* No, sir.

"*Q.* You can't compute it?

"*A.* No, sir.

"*Q.* Well, was there anyone else at the scene with you at that time that might have done that?

"*A.* Yes, there were several other officers on the scene.

* * *

"*Mr. Berg* (interposing): Well, I think I can ask him if there was anyone else that was there.

"*A.* Yes, there were several other officers on the scene.

"*Q.* Would there be any—do you know who they would be?

"*A.* Not offhand other than Patrolman Reagan who was my partner that night.

"*Q.* Would there have been, say, a superior officer at the scene?

"*A.* Yes, sir.

"*Q.* Would that particular person be the one that maybe calculated the speed?

"*A.* Yes, sir.

"*Q.* Did you write this indication of speed on the police report?

"*A.* Yes, sir.

"*Q.* This was something that was computed by someone else, is that correct?

"*A.* Yes, sir.

\* \* \*

"*The Court:* How would you determine—don't tell me what the speed was—but, how would you go about determining the speed?

"*A.* I'd have to show you the graph.

"*Q.* Well, I think he should be able to use the graph. That is what you were instructed on, is that correct?

"*A.* Yes, sir.

"*The Court:* Can you do that from memory?

"*A.* Yes, sir. I have the graph here.

"*The Court:* Well, tell me what method you used to do this.

"*A.* It's sort of difficult to explain.

\* \* \*

"*Q. (by Mr. Zolkower, defense attorney).* Officer Bonner, do you know who has prepared that formula?

"*A.* Well, it's from a book.

"*Q.* From a book?

"*A.* Yes, it's from the Traffic Investigator's Manual for police officers.

"*Q.* When is the first time you ever saw this formula?

"*A.* This morning.

"*Q.* You have never used it before?

"*A.* No, I have not.

"*Q.* You have no idea of how accurate it is?

"*A.* No, sir.

"*Q.* Do you have any idea whether the weight of a vehicle has anything to do with the accuracy of these figures?

"*A.* No, sir.

\* \* \*

"*Q.* But, Officer, do you have knowledge, your own knowledge, of how to determine skid marks or speed from skid marks?

"*A.* I do now.

"*Q.* You do now because you have that formula in front of you, is that correct?

"*A.* Yes, it would be too complicated, you know, out of your head."

Defense counsel objected on the basis of the witness's length of experience and expertise and on the basis that the witness could not vouch for accuracy.

On July 18, 1973, the jury returned a verdict in plaintiff's favor, awarding him $13,000 in damages.

On August 30, 1973, defendant filed a motion for a new trial. Two of the present grounds of appeal are adequately explained by the defense counsel's argument to the trial judge during the hearing on that motion.

"As the source of his testimony, the officer, Thomas Bonner, used a chart which admittedly he was not familiar with, which he could not verify or testify as to its veracity which he had been instructed on using only the morning of his testimony by a superior officer and the officer was not a witness nor was he available for cross examination. Further, the chart from which he testified was not introduced into evidence. As to this particular point, the defendant claims that this is reversible error and it is clearly hearsay.

"Further, the court then instructed the jury at the conclusion of this case, the jury could determine, as part of the damages, the value or the damages to the motorcycle that the plaintiff was operating at the time of the accident. However, the testimony at the trial was that the motorcycle did not belong to the plaintiff and it was not his property. Further, there was no testimony as to the value of the motorcycle nor of the cost of

repair and on these grounds the defendant alleges that there was error that was also objected to after the judge instructed the jury.

"Part of the judge's instructions included that the jury was free to find as damages a—as damages the cost of travel to and from Arizona, the place of residence of the plaintiff, to Michigan for trial. There was also no testimony presented as to the means of transportation used by the plaintiff or the cost of such transportation or where and it was also objected to by the defendant's counsel. Upon the judge instructing the jury as such, and based upon the testimony which was objected to by defense counsel, we feel [sic] would bring this matter to review as to both the testimony during the trial and as to the instructions given by the court."

Apparently in an attempt to cure any possible problems arising from submitting the question of damages to the motorcycle and the cost of plaintiff's trip from Arizona to Michigan, plaintiff's counsel suggested that "any error in regard to this could be cured by a simple remittitur of the court subtracting from the verdict any value that may be assessed on the [motorcycle]". The trial judge found that it would be very difficult to assume that the jury gave more than $1,000 as to the damage to the motorcycle and for travel expenses. Thus, the trial judge denied the motion for new trial and ordered remittitur of $1,000. Plaintiff agreed to reduce his judgment by the sum of the remittitur. From these determinations, defendant appeals.

I

Defendant asserts that the allowance of the testimony by the police officer was inadmissible hearsay and amounts to reversible error.

While the page from the Secretary of State's booklet may well have been admissible, see *Wine-*

*koff v Pospisil,* 384 Mich 260; 181 NW2d 897 (1970), it related to stopping distances; whereas, the basic measurement in this case was skid marks. To determine speed on the basis of these skid marks, the police department chart was used but not introduced. The officer testified that these calculations had been made by another officer in redoing the calculations on the morning of the day of his testimony. Thus, it is obvious that to some greater or lesser extent the officer's testimony must have been based upon work done and statements made to him by the other officer, who was not called and did not testify in open court. As the testifying officer could not vouch for the accuracy or veracity of the chart or the methodology used, the defendant's right to cross-examine was denied. The testimony was hearsay evidence since it not only called for a conclusion on the part of the testifying witness but also depended in part for its credibility on the veracity and competency of another person and the method used itself. See *Prieskorn v Kiehler,* 4 Mich App 679, 682; 145 NW2d 397, 399 (1966). As the testimony was hearsay and defendant had no right to cross-examine, the testimony was inadmissible. See, generally, McCormick, Evidence (2d ed), §§ 245, 247, pp 583–584, 586–587, and 31A CJS, Evidence, § 193, pp 520–532.

Plaintiff maintains that if any error occurred it was harmless and not prejudicial, and, further, that the officer had the ability to testify as to his opinion of speed. This was the only testimony presented showing that the speed was 50 to 55 miles per hour. Thus, it is obvious that its introduction, in this fashion, was prejudicial.

In *Brummitt v Chaney,* 18 Mich App 59; 170 NW2d 481 (1969), the Court held that an expert

may render an opinion concerning the point of impact of an accident and speed of vehicles as based upon skid marks. The police officer testifying in that case was said to be "highly experienced in this field". *Id.* at 62; NW2d 483. In the present case, there is no showing that the testifying officer was anything but inexperienced in this field nor that the opinion was substantially his own rather than that of the other officer who may well have been highly experienced in the field. The error was not harmless; it was prejudicial and is adequate cause for reversal.

## II

On damages, the trial court instructed the jury as follows:

"You should include each of the following elements of damage which you decide has been sustained by the plaintiff to the present time. The physical pain and suffering; the mental anguish; fright and shock; denial of social pleasure and enjoyments of life; and any disability that you may find including the loss of ability to be gainfully employed; any increase in difficulties arising from aggravation of a pre-existing ailment or condition; the reasonable expenses of necessary medical care, treatment and services; the loss of earning capacity; the reasonable expense for transportation to and from Michigan to Arizona, and property damage. In this case the plaintiff claims damages to his motorcycle and if you decide that the plaintiff is entitled to such damages, you have to determine an amount."

To this instruction defense counsel objected. The jury was not charged as to the instruction's inappropriateness.

As the motorcycle damaged was not the property of the plaintiff and there was no evidence

introduced as to any costs incurred pursuant to traveling for trial, the instruction was clearly incorrect and this Court is unable to speculate as to the amount which the jury may have awarded for these items.

### III

Defendant argues that the estimation on the part of the trial court as to the amount for remittitur was sheer guess work. We agree.

In *Joslin v Grand Trunk W R Co,* 35 Mich App 308; 192 NW2d 261 (1971), the trial judge denied the defendant's motion for a new trial but ruled that its instructions on damages constituted error and that defendant should be granted a new trial unless plaintiff accepted a remittitur of 10% of the verdict. The remittitur was accepted by plaintiff. The trial judge had instructed the jury that they could award damages for loss of companionship. This Court found that instruction to be erroneous and said, at p 312; NW2d 263:

> "We are unaware of any method which would permit the trial court to determine what portion of this general verdict was based upon loss of companionship. We must hold that the trial court erred by requiring the 10% remittitur."

Likewise, in the present case we are unaware of any method permitting the trial court to determine what portion of the general verdict was for damage to the motorcycle and plaintiff's travel expenses. Thus, we must hold that the trial court erred by ordering the remittitur.

Reversed and remanded for a new trial. Costs to defendant.