SLAYTON v MICHIGAN HOST, INC

Docket No. 73858. Submitted February 13, 1985, at Detroit.—Decided
August 5, 1985.

Donna May Slayton was employed as a waitress by Michigan
Host, Inc. In January, 1979, Slayton and a number of her co-
workers filed a suit in federal court alleging that the rules
regarding the uniforms they were required to wear were sexu-
ally discriminating and subjected them to sexual harassment.
That suit was dismissed without prejudice in 1980. In Novem-
ber, 1979, Slayton sought workers' disability compensation
benefits for injuries caused by job-related falls, work, and
emotional harassment. In October, 1980, the workers' compen-
sation claim was redeemed by Slayton, releasing Michigan Host
from any and all liability under the Worker's Disability Com-
pensation Act for all injuries or occupational diseases including

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Civil Rights § 154 et seq.
  Application of state law to sex discrimination in employment. 87
  ALR3d 93.
[3] Am Jur 2d, Appeal and Error § 891 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Instructions to Jury. [4, 6, 7] Am Jur 2d, Evidence § 493 et seq.
  Admissibility, under public records exception to hearsay rule, of
  record kept by public official without express statutory direction
  or authorization. 80 ALR3d 414.
[5] Am Jur 2d, Appeal and Error § 601 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Appeal and Error.
[7] Admissibility under Uniform Business Records as Evidence Act or
  similar statute of medical report made by consulting physician to
  treating physician. 69 ALR3d 104.
[8] Am Jur 2d, Civil Rights § 364 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Discrimination § 3.
[9, 10] Am Jur 2d, Limitation of Actions § 138 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Limitation of Actions.
[11] Am Jur 2d, Workmen's Compensation § 344 et seq.
  See the annotations in the ALR3d/4th Quick Index under topic
  Workers' Compensation.

nervousness, neurosis, functional problems, psychosis, or other mental disorders. Slayton also voluntarily quit her employment with Michigan Host and waived any and all seniority rights she might have had. In January, 1981, Slayton brought an action in Wayne Circuit Court under the Elliott-Larsen Civil Rights Act against Michigan Host and Jack Vogel and Betty Tawil, employees of Michigan Host and Slayton's supervisors while she was employed by Michigan Host, alleging gender discrimination and harassment. Slayton alleged that Michigan Host forced her to quit her job in retaliation for her suit in federal court and for her filing of a complaint with the Equal Employment Opportunity Commission. Defendants moved for accelerated judgment on the basis that the circuit court lacked jurisdiction over the controversy because Slayton's exclusive remedy was to seek compensation under the Worker's Disability Compensation Act. The court granted defendant's motion for accelerated judgment. Slayton appealed and the Court of Appeals reversed and remanded, 122 Mich App 411 (1983). At the close of proofs at trial, the court, James A. Hathaway, J., granted a directed verdict in favor of Jack Vogel. He later entered a judgment on a jury verdict in favor of defendants Michigan Host and Tawil. Plaintiff appealed. *Held:*

1. The trial court erred both by receiving evidence of the uniforms required in other restaurants and by instructing the jury that such practices were relevant to the determination of whether the defendants had engaged in sexual discrimination. Customary practice in the industry cannot justify illegal discrimination under the civil rights act. The evidence was irrelevant and the instruction erroneous.

2. The trial court erred in admitting evidence concerning a National Labor Relations Board proceeding involving plaintiff. The evidence was irrelevant, since the issues were different. Also much of it was inadmissible hearsay. Its admission was prejudicial.

3. The trial court improperly excluded the testimony of plaintiff as to her personal knowledge of attempts made by other waitresses at Host to make their uniforms more modest and the testimony of two other waitresses at Host concerning the sexual harassment they received while wearing the revealing uniforms. Such evidence was relevant to the determination of whether the employer had created an environment in which sexual harassment was pervasive.

4. The issue of whether it was error to exclude other testimony was not preserved for appeal since plaintiff did not make an offer of proof.

5. A letter which was from a doctor who had examined

plaintiff at the request of Michigan Host's insurer for the purpose of defending the workers' compensation claim and which dealt with the extent of plaintiff's injuries was improperly admitted. The doctor did not testify and the letter constituted inadmissible hearsay. Statements in medical records which refer to a patient's history of medical diagnosis are not admissible under the business record exception to the hearsay rule.

6. An action by an employee alleging discrimination in employment practices is subject to a three-year limitations period under the statutory provision which requires that "all other actions to recover damages for injuries to person and property" be commenced within three years of the time the claim accrues. The period of limitation is tolled during the time in which a prior action between the parties on the same issue is pending if the prior action is not adjudicated on the merits. Application of the "continuing wrong" doctrine does not alter the applicable period for which damages may be recovered.

7. The trial court prohibited plaintiff from recovering any damages for emotional distress, mental anguish, and physical pain and suffering after October 15, 1980, the date plaintiff redeemed her workers' compensation claim. Such claims are not barred by the exclusive-remedy clause of the Worker's Disability Compensation Act because they are independent of any disability which might be compensable under that act. Plaintiff is entitled to seek recovery for those damages, physical, mental or emotional, which she can prove were unrelated to the disability already compensated for by the redemption agreement. Therefore, on remand, the court is to determine what claims had been settled in the redemption proceeding.

Reversed and remanded with instructions.

1. CIVIL RIGHTS — SEX DISCRIMINATION — PRIMA FACIE EVIDENCE.

A woman, to show a prima facie case of sex discrimination under the Elliott-Larsen Civil Rights Act, must show that she is a member of the class entitled to protection under the act and that, for the same or similar conduct, she was treated differently than a man (MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.).*

2. CIVIL RIGHTS — BURDEN OF PROOF — CUSTOMARY PRACTICES.

Once a plaintiff has established a prima facie case of discrimination under the Elliott-Larsen Civil Rights Act, the burden of proof shifts to the defendant to articulate a nondiscriminatory reason for his action; if the defendant gives such a reason, the burden shifts back to the plaintiff to show that the proffered reason was not his true reason, either by persuading the trier

of fact that a discriminatory reason more likely motivated the defendant or by showing that the proffered reason is not worthy of credence; a reason based on a customary practice in the industry is insufficient to rebut the prima facie case.

3. APPEAL — JURY INSTRUCTIONS.

The giving of an erroneous jury instruction requires reversal where, without the instruction, the result might well have been different.

4. EVIDENCE — HEARSAY — PUBLIC RECORDS — FINDINGS OF FACT — CIVIL ACTIONS.

Statements contained in public records and reports setting forth matters observed pursuant to a duty imposed by law which there was a duty to report are not excluded by the hearsay rule where the declarant is unavailable as a witness; however, factual findings which result from an investigation by a public agency made in accordance with its authority are not admissible in private civil actions (MRE 803[8]).

5. EVIDENCE — APPEAL — RULES OF EVIDENCE — PRESERVING QUESTION.

The issue of whether the exclusion of evidence is erroneous is not preserved for appeal where the party seeking its admission fails to make an offer of proof (MRE 103[a][2]).

6. EVIDENCE — HEARSAY — RULES OF EVIDENCE.

Hearsay is inadmissible except as provided by the hearsay exceptions (MRE 802).

7. EVIDENCE — MEDICAL RECORDS — HEARSAY — RULES OF EVIDENCE.

Statements in medical records which refer to a patient's history or medical diagnosis are not admissible under the business record exception to the hearsay rule (MRE 803[6]).

8. LIMITATION OF ACTIONS — EMPLOYMENT DISCRIMINATION.

An action by an employee alleging discrimination in employment practices is subject to a three-year limitation period under the statutory provision which requires that "all other actions to recover damages for injuries to person and property" be commenced within three years of the time the claim accrues (MCL 600.5805[7]; MSA 27A.5805[7]).

9. LIMITATION OF ACTIONS — TOLLING.

The period of limitation is tolled during the time in which a prior action between the parties on the same issue is pending if the prior action is not adjudicated on the merits (MCL 600.5856; MSA 27A.5856).

10. TORTS — CONTINUING WRONG DOCTRINE — LIMITATION OF AC-
    TIONS.

    The continuing wrong doctrine provides that, where there are
    continuing wrongful acts within the period limited by statute,
    recovery is not barred; however, while complete recovery may
    not be barred under the continuing wrong theory, the damages
    recoverable are limited to only those occurring within the
    period of limitation and, where appropriate, after the filing of
    the complaint.

11. WORKERS' COMPENSATION — CIVIL RIGHTS — DISCRIMINATION —
    EXCLUSIVE-REMEDY PROVISION.

    A victim of discrimination may bring a civil suit to recover
    damages for any humiliation, embarrassment, outrage, disap-
    pointment, and other forms of mental anguish which flow from
    the discrimination even where the discrimination occurs in the
    course of his employment; such claims are not barred by the
    exclusive-remedy clause of the Worker's Disability Compensa-
    tion Act because they are independent of any disability which
    might be compensable under that act.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw),* for plain-tiff.

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by-*Donald B. Miller),* for defendants.

Before: J. H. GILLIS, P.J., and HOOD and R. M. DANIELS,* JJ.

HOOD, J. Plaintiff brought this action alleging sex discrimination and harassment in violation of the Elliott-Larsen Civil Rights Act[1] against her employer, defendant Michigan Host, Inc., and her supervisors, defendants Vogel and Tawil. Plaintiff,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Against defendants Tawil and Vogel, plaintiff also alleged claims of intentional infliction of emotional distress, interference with plain-tiff's contract of employment with defendant Host, and interference with advantageous business relations. In an order of summary judg-ment based on GCR 1963, 117.2(1), failure to state a claim, these causes of action were dismissed by the circuit court. Plaintiff does not appeal from this order.

who was employed by Host as a waitress, claimed that the work uniform requirement of high heeled shoes, short skirt, and low cut blouse was discriminatory and subjected her to sexual harassment. Plaintiff further claimed that the defendants harassed her into quitting her job in retaliation for her filing a complaint with the Equal Employment Opportunity Commission and in federal court.[2]

Defendants brought a motion for accelerated judgment under GCR 1963, 116.1(2) claiming that the circuit court was without jurisdiction over the controversy because compensation under the Worker's Disability Compensation Act was plaintiff's exclusive remedy. The trial court granted defendants' motion, and plaintiff appealed. We reversed the trial court and remanded the case for further proceedings.[3]

In August, 1983, plaintiff's case proceeded to trial. At the close of proofs, the trial court directed a verdict in favor of defendant, Jack Vogel. The jury found in favor of Host and Tawil. Plaintiff now appeals as of right.

Plaintiff raises several points of error on appeal which we discuss *seriatim.*

Plaintiff first argues that the trial court erred both by receiving evidence of the uniforms required in other restaurants and by instructing the jury that such practices were relevant to the determination of whether the defendants had engaged in sexual discrimination. We agree.

The title-object clause of the Elliott-Larsen Civil Rights Act provides in pertinent part:

[2] See *Marentette v Michigan Host, Inc,* 506 F Supp 909 (ED Mich 1980). This suit was brought by plaintiff and other employees of Host under Title VII of the Civil Rights Act of 1964 and was based on allegations similar to those in the instant appeal. Before the suit was tried, Host changed to a more modest uniform. Therefore, this federal court action was dismissed as moot.

[3] *Slayton v Michigan Host, Inc,* 122 Mich App 411; 332 NW2d 498 (1983).

"AN ACT to define civil rights; to prohibit discriminatory practices, policies, and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight or marital status; * * *."

Accordingly, the act mandates, *inter alia*, that an employer shall not

"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(a); MSA 3.548(202)(a).

In order to establish a prima facie case of sex discrimination, a woman must show that she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man. The crux of a sex discrimination action is that similarly situated persons have been accorded different treatment because of their sex. *Heath v Alma Plastics Co,* 121 Mich App 137; 328 NW2d 598 (1982); *C Thorrez Industries, Inc v Civil Rights Comm,* 88 Mich App 704, 707-708; 278 NW2d 725 (1979); *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 372-373; 263 NW2d 376 (1977).

Once a plaintiff establishes by the preponderance of the evidence that a prima facie case exists, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Clark v Uniroyal Corp,* 119 Mich App 820, 824-825; 327 NW2d 372 (1982). If the defendant is able to articulate such a reason, the plaintiff must then be given the opportunity to prove by a preponderance of the evidence that the reasons of-

fered by the defendant were not its true reasons but were mere pretext for the discrimination. *Id.*

In this case, pictures of costumes worn by nontestifying waitresses in other restaurants not owned by Host were offered by defense counsel and admitted by the trial court for the purpose of showing the customary practice in the industry and that Host was "not alone" in requiring its waitresses to wear scanty and revealing costumes. Because this is the only basis offered to justify the admission of this evidence, we presume that the pictures were offered in support of a legitimate, nondiscriminatory reason for its costuming requirement.

However, we believe that a reason based upon the customary practices of an industry is insufficient to rebut a prima facie case of sex discrimination as a matter of law.

Concerning claims of sex discrimination brought under Title VII of the Civil Rights Act of 1964,[4] Federal courts have held that a reason based upon a desire to compete in the industry,[5] or customer preference,[6] is discriminatory on its face as merely reiterating the defendant's policy to impose the requirement on employees because they are females. We find that a reason based upon the customary practices of the industry is similarly discriminatory on its face. Indeed, it is because history has taught us that customary practices often perpetuate discrimination that the civil rights legislation was enacted.

Like its federal counterpart in Title VII, we

[4] 42 USC 2000e-2.

[5] *Gerdom v Continental Airlines, Inc,* 692 F2d 602, 609 (CA 9, 1982), cert den 460 US 1074; 103 S Ct 1534; 75 L Ed 2d 954 (1983).

[6] *Fernandez v Wynn Oil Co,* 653 F2d 1273, 1276-1277 (CA 9, 1981); *Diaz v Pan American World Airways, Inc,* 442 F2d 385, 389 (CA 5, 1971), cert den 404 US 950; 92 S Ct 275; 30 L Ed 2d 267 (1971).

believe that the prohibition against sex discrimination in the Elliott-Larsen Civil Rights Act was "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex sterotypes". *Sprogis v United Air Lines, Inc,* 444 F2d 1194, 1198 (CA7, 1971), *cert den* 404 US 991; 92 S Ct 536; 30 L Ed 2d 543 (1971). Therefore, it would be anomalous to allow the customary practices of an industry to determine whether the discrimination is valid.

Defendant contends, however, that the evidence was properly admitted as responsive to plaintiff's evidence of less-revealing costumes worn by other waitresses and herself at Host and other restaurants. We disagree.

Plaintiff's evidence was relevant to show that the more revealing costumes caused sexual harassment and that Host was put on notice of this condition. Defendant's evidence, on the other hand, neither refuted plaintiff's assertion that the costumes caused harassment nor pertained to any valid defense. We hold, therefore, that this evidence was erroneously admitted.

We find this error particularly egregious in light of the instructions given to the jury. Plaintiff had requested the following curative instruction:

"I charge you, ladies and gentlemen, that customary usage and practice of an industry cannot be determinative of whether a practice is discriminatory. What ought to be done is fixed by a standard of compliance with the law, whether it is usually complied with or not. To permit an 'industry standard' to determine whether or not these defendants discriminate would permit the industry to define what the law is. This is a job which has been left to the legislature."

The trial court gave defendant's requested instruction instead:

"The customary usage and practice of the industry is relevant evidence to be used in determining whether or not this standard has been met. Such usage cannot, however, be determinative of the standard."

The trial court borrowed this instruction from *Flynn v Libke,* 101 Mich App 331, 338; 300 NW2d 560 (1980), *rem* 411 Mich 942 (1981). *Flynn* concerned the proper standard of care to be applied in a bailment situation. We believe that evidence of the customary usage and practice of an industry is totally irrelevant to the determination of whether such a practice or custom is discriminatory. Were it otherwise, an employer in an industry replete with discriminatory practices could be found immune from liability because such was the customary practice.

Our Supreme Court has stated that not all instructional error requires reversal. However, where "the result might well have been different" without the error, reversal is required. *Rouse v Gross,* 357 Mich 475, 482; 98 NW2d 562 (1959); *Bailey v Graves,* 411 Mich 510, 516; 309 NW2d 166 (1981). We are unconvinced that, had the evidence of the customary practices of the industry and the disputed instruction been omitted, the jury's verdict would not have been different. Therefore, we reverse the jury's verdict and remand this cause for a new trial.

We also agree with plaintiff that reversible error occurred when the trial court allowed defendant to interject evidence of a National Labor Relations Board proceeding involving the plaintiff.

In her complaint, plaintiff claimed that defendants retaliated against her for filing complaints with the Equal Employment Opportunity Commission and in federal court. Plaintiff sought to prove this claim at trial by introducing evidence of two

allegedly unjustified suspensions. These two suspensions also formed the basis of an unfair labor practice charge filed previously by plaintiff with the National Labor Relations Board. After initial investigations, the NLRB sent a letter in which it stated its belief that further proceedings were not warranted, that a complaint would not be issued, and that the case would be dismissed. The NLRB attached to this letter the factual findings which supported its decision.

Over plaintiff's objection, the trial court allowed defendants to cross-examine plaintiff and one of plaintiff's witnesses as to the outcome of the NLRB proceeding and allowed defendant to read the letter in which the NLRB had stated its decision to dismiss the case. The court, however, would not permit the defendants to read to the jury the factual findings of the NLRB attached to the letter. Further, in closing arguments the defendant was allowed to argue that the refusal of the NLRB to issue a complaint was "highly persuasive evidence" that no retaliation occurred.

We hold that the introduction of evidence of the NLRB proceedings was prejudicial error. Our primary reason for this holding is that the evidence was irrelevant to the case at bar.

Plaintiff's claim with the NLRB was based upon § 158 of the National Labor Relations Act, 29 USC 158(a)(4), which states:

"(a) It shall be an unfair labor practice for an employer—

\* \* \*

"(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchaper."

The basis for plaintiff's claim under the NLRA

was that her employer had discharged her because of her activities on behalf of the restaurant employees and union.

The retaliation claim at issue in the instant case was brought under the Elliott-Larsen Civil Rights Act, MCL 37.2701(a); MSA 3.548(701)(a), which reads:

"Two or more persons shall not conspire to, or a person shall not:

"(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act."

The basis of this claim was that the defendants had unjustifiably suspended her on two occasions in retaliation for her filing a complaint against defendants with the EEOC and in federal court alleging violations of her civil rights.

We find that these two statutes are not identical and that the same actions which would justify the issuance of a complaint under one statute do not necessarily justify the issuance of a complaint under the other statute. Given the bases for the respective claims in this case, we conclude that the NLRB's refusal to issue a complaint was not relevant to whether defendant engaged in retaliatory conduct prohibited under the Elliott-Larsen Civil Rights Act.

Further, the letter that was read to the jury was clearly inadmissible hearsay. This letter consisted of out-of-court statements and was offered into evidence to prove the truth of the matters asserted therein. MRE 801(c). Hearsay is not admissible unless it falls within one of the exceptions to the hearsay rule. MRE 802. *Swartz v Dow Chemical Co,* 414 Mich 433, 443; 326 NW2d 804 (1982).

We are unpersuaded by defendant's argument that the letter falls within the MRE 803(8) exception to the hearsay rule which provides:

"(8) Public records and reports. Records, reports, statements, or data compliations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and subject to the limitations of MCLA 257.624; MSA 9.2324."

Our Supreme Court in *Swartz v Dow Chemical, supra,* pp 443-444, made clear that evaluative reports of this kind are not within the MRE 803(8) exception to the hearsay rule:

"MRE 803(8) allows statements from public records and reports to come into evidence over a hearsay objection. This rule, however, unlike FRE 803(8)(C), rejects the introduction in private civil actions of factual findings resulting from an investigation made in accordance with authority granted by law. Proposed MRE 803(8)(C), which was identical to FRE 803(8)(C), was found to be inconsistent with prior Michigan law and was rejected. Committee Note, MRE 803(8)." (Footnote omitted.)

In *Bradbury v Ford Motor Co,* 419 Mich 550, 554; 358 NW2d 550 (1984), the Supreme Court explained that, in disallowing the admission of investigative reports, MRE 803(8)(B) "reflects the narrow common-law rule which limits public reports of matters observed by agency officials to reports of *objective data* observed and reported by these officials". (Emphasis added.) In the case at bar, we do not dispute defendants' claim that, under 29 USC 160(c), the NLRB has a duty imposed by law to report its findings of fact and issue

a decision whether to issue a complaint. However, it is obvious that the letter which was read to the jury did not consist of a report of objective data, but consisted of an evaluative factual finding resulting from the NLRB's investigation of plaintiff's claim. Therefore, the letter did not fall within MRE 803(8)(B), or any other exception to the hearsay rule, and was erroneously admitted.

We find this evidence particularly prejudicial because of the inference placed before the jury that the NLRB had given to defendant's actions its official imprimatur. Therefore, we reverse and remand for a new trial on this basis also. *Swartz v Dow Chemical Co, supra,* p 444.

Plaintiff also contends that the trial court erred when it would not allow plaintiff to introduce in her case in chief testimony concerning the sexual harassment received by other waitresses at Host when they were required to wear the sexually revealing uniforms.

Plaintiff sought to testify as to her personal knowledge of attempts made by other waitresses at Host to make their uniforms more modest. Plaintiff also sought to introduce testimony of Mrs. Cooper and Mrs. Marentette, two waitresses at Host, concerning the sexual harassment they received while wearing the revealing uniforms. While some testimony of this sort was admitted on the issue of notice to defendants, the plaintiff was not allowed to introduce the other instances of harassment in her case in chief for other purposes.

In deciding this issue, we are guided by federal law.[7]

---

[7] This Court has held that federal precedent, although not binding, is persuasive in adjudicating discrimination claims under the Elliott-Larsen Civil Rights Act. *Clark v Uniroyal Corp,* 119 Mich App 820, 824; 327 NW2d 372 (1982); *Local 526-M v Civil Service Comm,* 110 Mich App 546, 552, fn 1; 313 NW2d 143 (1981), and *Civil Rights*

In *Vinson v Taylor,* — US App DC —; 753 F2d 141, 146, fn 40 (1985), the Court of Appeals for the District of Columbia held that such evidence was relevant to the determination of whether the employer had created an environment in which sexual harassment was pervasive for purposes of a Title VII claim. The court further held that it was error to exclude such evidence because the evidence "could be critical to a plaintiff's case, for a claim of harassment cannot be established without a showing of more than isolated *indicia* of discriminatory intent". *Id.* Accord, *Bundy v Jackson,* 205 US App DC 444, 453, fn 9; 641 F2d 934 (1981). See also *Donaldson v The Pillsbury Co,* 554 F2d 825, 832-833 (CA 8, 1977), *cert den* 434 US 856; 98 S Ct 177; 54 L Ed 2d 128 (1977).

Like Title VII of the Civil Rights Act of 1964, the Elliott-Larsen Civil Rights Act provides in pertinent part that "[a]n employer shall not: * * * [s]egregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment * * *". MCL 37.2202(c); MSA 3.548(202)(c). Further, the Elliott-Larsen Civil Rights Act sets forth the following standard for determining when discrimination due to sexual harassment occurs:

"(h) Discrimination because of sex includes sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:

"(i) Submission to such conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

"(ii) Submission to or rejection of such conduct or communication by an individual is used as a factor in

*Comm v Chrysler Corp,* 80 Mich App 368, 375, fn 4; 263 NW2d 376 (1977).

decisions affecting such individual's employment, public accommodations or public services, education, or housing.

"(iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or *creating an intimidating, hostile, or offensive employment,* public accommodations, public services, educational, or housing environment." MCL 37.2103(h); MSA 3.548(103)(h) (emphasis added).

We believe the evidence sought to be admitted by plaintiff was directly relevant to the question of whether, by imposing the uniform requirement, defendant had created an environment in violation of the Elliott-Larsen Civil Rights Act. Therefore, it was error to exclude it.

We do not believe, however, that it was error for the trial court to exclude the pictures of waitresses who did not testify at the trial. The pictures, standing alone, were not probative on the issue of whether sexual harassment was engendered by the wearing of the uniforms.

Nor can we rule that it was error to exclude the testimony of Mrs. Farr concerning the statements of another waitress, Mrs. Waters. Defendant objected to this evidence and the trail court excluded it on the basis that it was inadmissible hearsay. While the plaintiff argued at trial that the statements were admissions because they were made by an agent or servant within the scope of the agency or employment, MRE 801(d)(2)(D), plaintiff did not make an offer of proof as to the contents of the statements. Therefore, this issue was not preserved for appeal. MRE 103(a)(2); *Duckett v North Detroit General Hospital,* 84 Mich App 426, 432-433; 269 NW2d 626 (1978).

Plaintiff also argues that the admission of a

letter from Dr. Maitra was error inasmuch as the letter constituted inadmissible hearsay. We agree.

This letter was found in the file of plaintiff's treating physician, George Dean, M.D. Dr. Maitra had never treated plaintiff but had examined her at the request of Michigan Host's insurer for the purpose of defending against plaintiff's workers' compensation claim. Dr. Maitra did not testify but his letter, in modified form, was submitted to the jury over plaintiff's objection as evidence of the truth of the matters asserted therein regarding the extent of plaintiff's injuries.

We find that this letter was hearsay. Hearsay is inadmissible except as provided by the hearsay exceptions. MRE 802; *Hahnke v Ball,* 60 Mich App 114; 230 NW2d 333 (1975). Defendant offered no exception to the hearsay rule at trial but the trial court apparently justified the admission of the letter under the business record exception to the hearsay rule, MRE 803(6). The exception in MRE 803(6) provides:

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, or events, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

In *Carbonell v Bluhm,* 114 Mich App 216, 228; 318 NW2d 659 (1982), *lv den* 417 Mich 871 (1983),

we noted that the Michigan rule differs from its federal counterpart, FRE 803(6). The Michigan rule applies to "acts, transactions, occurrences, or events" while the federal rule applies to "acts, events, *conditions, opinions* or *diagnoses*" (emphasis added). Thus, this Court has concluded that statements in hospital records relating to acts, transactions, occurrences, or events may be admissible under MRE 803(6). *Lovend v William Beaumont Hospital,* 78 Mich App 686, 688-689; 261 NW2d 37 (1977). Statements referring to general descriptions of physical conditions have been included in this category. *Bond v Greenwood,* 34 Mich App 41, 43; 190 NW2d 731 (1971). However, statements referring to a patient's history or medical diagnosis have been deemed excluded from this exception. *Sponenburgh v Wayne County,* 106 Mich App 628, 652; 308 NW2d 589 (1981).

In the case at bar, while the ultimate opinion of Dr. Maitra as to whether the plaintiff suffered a disability was excised from the letter, the statements referring to plaintiff's medical history were not. The admission into evidence of these statements was clear error. Further, we entertain doubts as to whether portions of the remaining statements in the letter were admissible under this exception because they appear to be more in the nature of the doctor's opinion as to plaintiff's condition as opposed to a general description of her physical condition. See *Wade v Bay City,* 57 Mich App 581; 226 NW2d 569 (1975), *app dis* 394 Mich 755 (1975), for a discussion of this issue. However, regardless of whether the statements may be considered opinions or general descriptions of plaintiff's physical condition, we find that defendant did not lay a sufficient foundation for admission of this letter under MRE 803(6).

Foremost, this letter is lacking in the inherent

reliability and trustworthiness that has been the basis offered to justify this exception. See generally 5 Wigmore, Evidence (Chadbourn Rev), §§ 1522-1528, pp 442-449. Dr. Maitra was employed by defendant's insurer to examine plaintiff in order to defend defendant against plaintiff's workers' compensation claim. It is clear that Dr. Maitra's letter was not written for the purpose of treating plaintiff, but was written for the purpose of evaluating a disability claim.[8] Therefore, before it could have been admitted into evidence, plaintiff should have been accorded the right to cross-examine the maker of the letter, Dr. Maitra. See *Carlisle v General Motors Corp*, 126 Mich App 127, 129; 337 NW2d 4 (1983). Since plaintiff was not accorded this right of cross-examination, we find that the admission of the letter was error.

Because we reverse the jury verdict and remand for a new trial, we also review the trial court's ruling as to the scope of recoverable damages.

The trial court prohibited plaintiff from pursuing damages prior to May, 1976. This date was arrived at by applying the three-year period of limitations in MCL 600.5805(7); MSA 27A.5805(7), plus 20 months credit for the time during which plaintiff's case was pending in federal court, to the time of the filing of the instant lawsuit on January 28, 1981. We agree with this aspect of the court's holding.

The three-year period of limitations for injuries to a person in MCL 600.5805(7) is applicable to an employee alleging discrimination in employment practices. *Mair v Consumers Power Co*, 419 Mich 74; 348 NW2d 256 (1984); *Gilbert v Grand Trunk*

---

[8] Since the letter was not written for the purpose of treating plaintiff, it could not, of course, come within the exception in MRE 803(4), statements made for purposes of medical treatment or diagnosis in connection with treatment.

*W R Co,* 95 Mich App 308, 316-317; 290 NW2d 426
(1980). Thus, the trial court was correct in apply-
ing this statute to limit the scope of damages
recoverable by plaintiff to those occurring within
three years of the date of plaintiff's filing her
complaint. The trial court was also correct in
crediting the 20-month period during which plain-
tiff's federal discrimination suit was pending.
Plaintiff's claim in federal court was dismissed
without reaching the merits because the relief
prayed for was beyond the scope of Title VII relief.
*Marentette v Michigan Host, Inc,* 506 F Supp 909,
913 (ED Mich, 1980). This Court has held that the
running of the period of limitations is tolled pursu-
ant to MCL 600.5856; MSA 27A.5856 where a
plaintiff has previously filed an action against the
same defendants and where no decision was ren-
dered on the merits in the previous case.[9] *Affili-*

[9] The trial court correctly allowed plaintiff to seek recovery for
compensatory damages occurring before the enactment of the Elliott-
Larsen Civil Rights Act on March 31, 1977. The act's predecessor, the
Fair Employment Practices Act, MCL 423.301 *et seq.;* MSA 17.458(1),
*et seq.,* did not provide for compensatory relief. However, the Michi-
gan Supreme Court in *Pompey v General Motors Corp,* 385 Mich 537,
553; 189 NW2d 243 (1971), held that "a person aggrieved by the
violation of a civil rights statute is entitled to pursue a remedy which
will effectively reimburse him for or relieve him from violation of the
statute, notwithstanding the statute did not expressly give him such
right or remedy".

Accordingly, plaintiffs have been allowed to seek recovery for
damages which occurred as a result of discrimination before the
enactment of the Elliott-Larsen Civil Rights Act. See *e.g. Stimson v
Michigan Bell Telephone Co,* 77 Mich App 361; 258 NW2d 227 (1977);
*Gillispie v Bd of Tenant Affairs of the Detroit Housing Comm,* 122
Mich App 699; 332 NW2d 474, *lv den* 417 Mich 1100.37 (1983); *King v
General Motors Corp,* 136 Mich App 301; 356 NW2d 626 (1984).

Further, as early as 1965, the FEPA was amended to prohibit sex
discrimination in employment. 1965 PA 344. Citing *Hudak v Ex-Cell-O
Corp,* 58 Mich App 135; 227 NW2d 251 (1975), *lv den* 394 Mich 795
(1975), defendant claims that the amendment's prohibition against sex
discrimination was unconstitutional as not within the object clause of
the statute. However, 1972 PA 267 amended the object clause of the
act to reflect the concerns about sex discrimination. Therefore, as of
the date of the 1972 amendment, the FEPA contained a valid section
against sex discrimination in the workplace. Because we hold that

ated *Bank of Middleton v American Ins Co*, 77
Mich App 376, 378-379; 258 NW2d 232 (1977);
*Meda v City of Howell*, 110 Mich App 179; 312
NW2d 202 (1981).

On appeal, plaintiff urges this Court to extend
the scope of recoverable damages to 1971, when
plaintiff was first required to wear a sexually
revealing uniform under the "continuing wrong"
doctrine. Where applied in Michigan, this doctrine

plaintiff may only seek recovery for damages occurring after May,
1976, we need not determine whether the FEPA contained a valid
prohibition against sex discrimination before the effective date of the
1972 amendment. But see *Bully v General Motors Corp*, 120 Mich
App 165, 172; 328 NW2d 24 (1982), *lv den* 417 Mich 1026 (1983),
where a panel of this Court held that the provision against sex
discrimination in § 3a of the FEPA was not in violation of the title-
object clause of the Michigan Constitution before the title's amend-
ment in 1972.

Defendant points out that in *Tucich v Dearborn Indoor Racquet
Club*, 107 Mich App 398; 309 NW2d 615 (1981), *lv den* 413 Mich 914
(1982), this Court held that the Elliott-Larsen Civil Rights Act should
not be applied retroactively. However, in *Tucich* this holding was
appropriate because the plaintiffs had failed to state a cause of action
based on alleged violations of the public accommodations act, MCL
750.146; MSA 28.343, occurring before the enactment of the Elliott-
Larsen Civil Rights Act. Partially dispositive to our holding in that
case was our finding that the Elliott-Larsen Civil Rights Act did not
replace or repeal any portion of the public accommodations act. See
MCL 37.2804; MSA 3.548(804). In this case, plaintiff claims damages
for violations under § 202 of the Elliott-Larsen Civil Rights Act, which
replaced the repealed FEPA.

MCL 8.4a; MSA 2.214 provides:

"Sec. 4-a. The repeal of any statute or part thereof shall not have
the effect to release or relinquish any penalty, forfeiture, or liability
incurred under such statute or any part thereof, unless the repealing
act shall so expressly provide, and such statute and part thereof shall
be treated as still remaining in force for the purpose of instituting or
sustaining any proper action or prosecution for the enforcement of
such penalty, forfeiture or liability."

Because plaintiff has stated a cause of action which would be viable
under both the FEPA and Elliott-Larsen Civil Rights Act, she should
be able to seek recovery for those damages occurring before the
enactment of the Elliott-Larsen Civil Rights Act and while the FEPA
was still in effect. A holding to the contrary would be tantamount to
stating that the Elliott-Larsen Civil Rights Act takes away rights
which have already accrued. We do not believe that such a holding is
appropriate for a remedial statute such as the one involved here.

provides that "[w]here there are continuing wrongful acts within the period limited by statute * * * recovery is not barred". *Defnet v Detroit,* 327 Mich 254, 258; 41 NW2d 539 (1950). However, while complete recovery may not be barred under the continuing wrong theory, the damages recoverable are limited to only those occurring within the period of limitation and, where appropriate, after the filing of the complaint. *Phelps v Detroit,* 120 Mich 447; 79 NW 640 (1899).

While the continuing wrong theory has only been applied in Michigan to nuisance or property trespass cases, see *Heisler v Rogers,* 113 Mich App 630, 636; 318 NW2d 503 (1982), federal courts from the sixth circuit have found the doctrine applicable to alleged civil rights violations of a continuing nature.

In *Marlowe v Fisher Body,* 489 F2d 1057, 1063 (CA 6, 1973), the court applied the doctrine to alleged continuing violations of Title VII of the Civil Rights Act of 1964 to find that plaintiff's cause of action was not time barred, but foreclosed the recovery of damages for those acts of discrimination occurring more than three years prior to the date of the filing of the complaint. Where discrimination claims under the Elliott-Larsen Civil Rights Act have been brought to federal court, the district courts have likewise seen fit to limit the recovery of damages to only those occurring within the period of limitations. *Richards v IBM Corp,* 504 F Supp 1369 (ED Mich, 1981); *Vandenhout v Manchester Plastics, Inc,* 538 F Supp 401 (ED Mich, 1982).

Plaintiff points to federal cases outside the sixth circuit which allowed recovery for continuing violations of Title VII occurring outside of the period of limitations and invites this Court to adopt their views. We decline this invitation.

The concept of continuing violations was developed by the federal courts to resolve timeliness questions; however, the case law on this concept is inconsistent and confusing, being based upon a conglomeration of several different ideas. See *Elliott v Sperry Rand Corp,* 79 FRD 580, 585-586 (D Minn, 1978); *Coleman v Clark Oil & Refining Co,* 568 F Supp 1035 (ED Wis, 1983). The strain of the continuing violation doctrine as developed under federal law which is relevant to this case is that a systematic policy of discrimination is actionable even where some or all of the events evincing its inception occurred prior to the limitations period. The reasoning is that operation of the discriminatory system continues against the employee and violates his or her civil rights up to a point in time that falls within the applicable limitations period. Continuing violations are typically found in matters of placements or promotions. Under this theory, where an illegal policy is so maintained, relief for injuries sustained even before the limitations period is deemed appropriate. *Acha v Beame,* 570 F2d 57 (CA 2, 1978); *Williams v Owens-Illinois, Inc,* 665 F2d 918 (CA 9, 1982).

The continuing violation doctrine as applied by the federal courts to allow recovery for injuries occurring before the beginning of the period of limitation is diametrically opposed to the operation of the continuing wrong theory applied in Michigan. While we have found federal cases under Title VII useful as guidance in the application of our civil rights act, the federal cases need not control where state law demands a contrary result. *Dep't of Civil Rights ex rel Jones v Dep't of Civil Service,* 101 Mich App 295, 303; 301 NW2d 12 (1980).

In the present case, plaintiff seeks compensatory damages for the violations of her civil rights. We

note that, under Title VII, such relief is not available. *Marentette v Michigan Host, Inc, supra.* Rather, the focus of Title VII relief is to "recreate the conditions and relationships that would have been had there been no" unlawful discrimination. *Franks v Bowman Transportation Co, Inc,* 424 US 747, 769; 96 S Ct 1251; 47 L Ed 2d 444 (1976); *International Brotherhood of Teamsters v United States,* 431 US 324, 372; 97 S Ct 1843; 52 L Ed 2d 396 (1977). This distinction compels us to restrict the scope of recoverable compensatory damages under the Elliott-Larsen Civil Rights Act to those occurring within the period of limitation.[10]

The trial court in the case at bar also prohibited plaintiff from recovering any damages for emotional distress, mental anguish, and physical pain and suffering after October 15, 1980, the date plaintiff redeemed her workers' compensation claim. We find this aspect of the court's ruling inconsistent with our decision in *Slayton v Michigan Host, Inc,* 122 Mich App 411, 416-417; 332 NW2d 498 (1983), where we stated:

"We hold that a victim of discrimination may bring a civil suit to recover for damages for any humiliation, embarrassment, outrage, disappointment, and other forms of mental anguish which flow from the discrimination injury. Such claims are not barred by the exclusive-remedy clause of the Worker's Disability Compensation Act because they are independent of any disability which might be compensable under the act. These types of injuries are the kind that the Elliott-Larsen Civil Rights Act was designed to protect against and to hold otherwise would undercut the legislative scheme to remedy discriminatory wrongs." (Citations omitted.)

The Supreme Court in *Boscaglia v Michigan Bell*

---

[10] We leave to another day the question of whether the continuing wrong doctrine may be applied differently to relief other than compensatory damages.

*Telephone Co,* 420 Mich 308, 316-317; 362 NW2d 642 (1984), has since written:

"The question whether physical, mental and emotional injuries are compensable under the FEPA or the civil rights act has not been briefed or argued, and hence we intimate no opinion in that regard. We think it self-evident, however, assuming the Legislature in enacting the civil rights acts intended to provide compensation for physical, mental or emotional injury resulting from discrimination, that it did not intend that objective would be defeated by the bar of exclusive remedy provisions of the workers' compensation act. Whatever may have been the intention of the Legislature in enacting the exclusive remedy provision of the workers' compensation act, if it intended in enacting civil rights legislation that workers discharged in violation of such legislation could recover for resulting physical, mental or emotional injury that intention would necessarily supersede or modify the scope of other legislation that otherwise would defeat the intent to permit such recovery." (Footnotes omitted.)

When we first remanded this case, we directed the attention of the parties and the trial court to the plaintiff's redemption agreement in order to determine what claims had been settled in the redemption proceeding. In that agreement, plaintiff redeemed all her claims for benefits under the Worker's Disability Compensation Act. On the same day, she also waived her seniority rights and released any claims she may have had against defendant for reemployment based on seniority rights.

With our previous decision and the *Boscaglia* holding in mind, we hold that plaintiff is entitled to seek recovery for those damages, physical, mental or emotional, which she can prove were unrelated to the disability already compensated for by the redemption agreement.

Reversed and remanded for proceedings not inconsistent with this opinion.