887 F.2d 683
 132 L.R.R.M. (BNA) 2646, 58 Fair
Empl.Prac.Cas. 1690,
101 A.L.R.Fed. 383, 51 Empl. Prac. Dec. P 39,405,
113 Lab.Cas. P 11,551,
4 Indiv.Empl.Rts.Cas. 1493
 Suzanne J. O'SHEA, individually and as personal
representative of the estate of Arthur W. O'Shea,
Deceased, Plaintiff-Appellant, Cross-Appellee,
v.
The DETROIT NEWS, a/k/a the Evening News Association,
Defendant-Appellee, Cross-Appellant.
 Nos. 87-2018, 87-2019.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 10, 1989.
Decided Oct. 11, 1989.
Rehearing and Rehearing En Banc Denied Dec. 18, 1989.
 
 Paul J. Manion (argued), Rutledge, Manion, Rabaut, Terry & Thomas, P.C., Detroit, Mich., for plaintiff-appellant, cross-appellee.
 Raymond J. Carey (argued), Butzel, Long, Gust, Klein, and Van Zile, Detroit, Mich., for defendant-appellee, cross-appellant.
 Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 Plaintiff-appellant Suzanne O'Shea, acting as an individual and as the personal representative of the estate of her late husband Arthur O'Shea, appeals the lower court's dismissal of her wrongful death claim against the defendant The Detroit News (News). These and the plaintiff's other claims arose from her husband's employment with the News. The News cross-appeals the lower court's holding that the plaintiff's claims were not preempted under Sec. 301 of the Labor Management Relations Act and its denial of the News's motion for summary judgment with respect to the plaintiff's age and handicap discrimination claims.
 
 
 2
 The lower court, holding that the plaintiff adequately stated claims for relief and that genuine issues of material fact remained with respect to these claims, dismissed the claims without prejudice and remanded them to the Michigan trial court for further proceedings. Because we find that O'Shea did not demonstrate that material issues of fact remained as to her age discrimination claim, we reverse the court below and direct that summary judgment be granted to the News. We affirm the dismissal, without prejudice, of the remainder of the plaintiff's action, as well as the court's dismissal of the wrongful death claim.
 
 
 3
 * The events that led to the filing of this suit took place in the fall of 1983. In October of that year, 57-year-old reporter Arthur O'Shea, who had been with the News since 1970, was told by his superiors, deputy news editor Phil Corner and news editor Mary Swanton, that he was to replace Fred Menardo, the midnight police beat reporter, who had just died of a heart attack. Both sides agree that O'Shea objected to the change and that, because of his objections, he was told he only had to work the shift for a year. The plaintiff alleges that the News was engaged in a campaign to eliminate older employees, pointing out that the paper had offered to buy out the pensions of several employees if they left. O'Shea alleges that the paper was guilty of transferring older employees to undesirable positions in order to force them to retire. The defendant denies having any such policy and states that it transferred O'Shea because it wanted an experienced rewrite person to handle the police beat. O'Shea, the defendant contends, was to stay at the office and do his reporting by phone.
 
 
 4
 The plaintiff, Mrs. O'Shea, claims that the supervisors told her husband that he had to make the change because he had too much invested in the job to quit. The company denies that this statement was made. The plaintiff also claims that the company was aware that O'Shea's health was declining, because in 1982 he requested that he be relieved of split shift duty. This duty required him to work until midnight on Sunday night and then come back to work at nine o'clock Monday morning. The defendant granted O'Shea's request and moved him to a regular shift. The plaintiff also claims that the supervisors knew that O'Shea had suffered a heart attack in 1969. The defendant states that no one in management knew of any health problems suffered by O'Shea. O'Shea objected to taking the midnight shift, the defendant contends, because it would be disruptive to his personal life.
 
 
 5
 The terms and conditions of employment at the News were governed by a collective bargaining agreement. This agreement gave the employer discretion over all transfers that were deemed necessary to improve the quality of the paper. It also provided that the paper could not discriminate against its employees on the basis of any unlawful factor. The agreement stated that a final and binding grievance procedure was the exclusive mechanism for resolving disputes arising out of the application and interpretation of the terms of the contract.
 
 
 6
 The plaintiff contends that after starting work on the midnight shift, O'Shea had immediate health problems. In October, he came down with a rash that his personal physician stated could have been related to stress. Mrs. O'Shea contends that on October 29, 1983, he wrote a memo to his supervisor, Corner, recounting the conversation they had in which O'Shea asked to be relieved from the shift because of poor health and fatigue. The plaintiff contends that, on November 9, 1983, O'Shea wrote a second memo stating that he was "no longer physically able to work this shift." None of these memos, allegedly written by O'Shea and sent to his superiors, were found in his personnel file.
 
 
 7
 On December 6, 1983, O'Shea suffered a heart attack. He was sent home from the hospital on December 23. He sustained another heart attack on February 19, 1984. He was then hospitalized until his death from yet another heart attack on February 28, 1984.
 
 
 8
 In April 1985, the plaintiff filed her complaint in a Michigan trial court. The case was then removed to federal court on the defendant's motion, for determination of whether the plaintiff's claims were preempted under Sec. 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. Sec. 185. The defendant moved for summary judgment on all claims. In September 1987, the court below remanded to state court the plaintiff's age and handicap discrimination claims, her constructive discharge claim, and her intentional infliction of emotional distress claim. The court below dismissed the wrongful death claim, as well as plaintiff's state common law breach of employment contract claim and her Sec. 301 breach of collective bargaining agreement claim. (These last two dismissals were not appealed.) These appeals followed.
 
 II
 
 9
 The News first contends that the court below erred in holding that O'Shea's state law claims were not preempted under Sec. 301 of the LMRA. The Supreme Court has held many times that Sec. 301 of the LMRA requires that all claims, state or federal, whose resolution depends on the interpretation of a collective bargaining agreement be preempted by federal law. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). This rule of law does not merely apply to labor-contract disputes for, "[t]he interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." Id. at 211, 105 S.Ct. at 1911. The Court in Allis-Chalmers went on to hold that the plaintiff employee's state law claim against his employer and its insurer for bad faith in handling his claim was "inextricably intertwined with consideration of the terms of the labor contract" in that the contract set out the rights and duties of the parties regarding insurance claims. Id. at 213, 218, 105 S.Ct. at 1912, 1914-15.
 
 
 10
 The defendant in the present case contends that the state law claims remanded to the state court are preempted under Sec. 301 and Allis-Chalmers and thus must be heard in federal court. The News argues that all the claims (the age and handicap discrimination claims, the constructive discharge claim, and the intentional infliction of emotional distress claim) depend on the plaintiff's allegation that O'Shea's transfer to the midnight shift was a demotion or some kind of punishment. Indeed, the plaintiff's complaint alleges that, after stating that the employment agreement prevented the defendant from demoting and/or transferring its employees so long as their performance was satisfactory, "defendant breached said employment agreement ... with the intention of replacing the decedent with younger personnel on the day shift, thereby forcing the older personnel into a constructive demotion by transferring said older personnel to the midnight shift." (While this allegation was originally stated in the dismissed breach of contract count, it was realleged in all the other counts.) On the specific age discrimination count, the plaintiff alleged that "plaintiff's decedent was demoted and/or transferred because of his age." On the intentional infliction of emotional distress count, the plaintiff terms the defendant's action a "wrongful demotion and/or transfer."
 
 
 11
 Thus, the defendant argues, the plaintiff's claims depend on whether O'Shea was in fact demoted under the agreement. If O'Shea's transfer was not a demotion, nothing wrongful was done to him. Without an adverse action by the employer, there cannot be discrimination, a constructive discharge, or any emotional distress. If all the employer did was exercise his right to transfer under the contract, then O'Shea had no complaint. If he believed that he was being demoted, then he should have filed a grievance. State discrimination or tort claims, however, are not the right vehicle for determining whether an employee was in fact demoted.
 
 
 12
 This analysis, though, must take into account the Supreme Court's decision in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The Court there declined to find Sec. 301 preemption in a case involving a plaintiff employee's claim that he was discharged for filing a workers' compensation claim. The Court ruled that the state retaliatory discharge claim was not inextricably intertwined with interpretation of the collective bargaining agreement even where the employer's defense was that he had good cause to fire the plaintiff under the contract. Id. 108 S.Ct. at 1885. The court reasoned that all the plaintiff had to prove was that he was fired and that it was because he filed a claim. The defendant can argue in defense that he had good cause under the contract, but this defense does not affect the fact that the plaintiff's claim is not based on the contract. The claim thus does not depend on any interpretation of the agreement; the relevant rights are completely outside the agreement. Even if the contract had a provision against retaliatory discharge, the state action is not preempted because the state right in question may be broader than the contract, as it is not dependent on it. Ibid.
 
 
 13
 We recently applied a Lingle-type analysis to handicap discrimination claims under the Michigan Handicappers' Civil Rights Act, the same act at issue here. Smolarek v. Chrysler Corp., 879 F.2d 1326 (1989) (en banc). In that case, we held that the plaintiff employee's handicap discrimination claim, in which the plaintiff argued that the employer should have accommodated him, was not preempted by Sec. 301. We held this despite the contention of the company that the final resolution of the question of whether the defendant could discriminate against the plaintiff depended on whether the employer was required to accommodate the plaintiff, given its rights under the contract. This question allegedly required interpretation of the collective bargaining agreement. Id. at 1334.
 
 
 14
 We held that the question of whether or not the plaintiff was discriminated against was separate from any possible defense the employer might have under the contract. All the plaintiff has to allege is that an action was taken against him because of a motive impermissible under the Act. It is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did. Ibid. The plaintiff's claim stands separate from this defense.
 
 
 15
 We hold that Lingle and Smolarek save the plaintiff's claims from preemption. With respect to the discrimination claim, the right not to be discriminated against in employment decisions based on handicap or age is independent of the question of whether O'Shea was demoted or not. The plaintiff in this case may try to show, for example, that the midnight shift was undesirable and that older or handicapped employees were assigned to it more often than younger or non-handicapped ones. The defendant could then defend by arguing that it had the right to transfer its employees in order to improve its paper, just as the defendants in Lingle and Smolarek could argue that they had good cause to fire their employees there. The point is that Michigan employees have the right not to be discriminated against on the basis of age or handicap without regard to the collective bargaining agreement's language about an employee's rights. The discrimination claims are therefore not preempted. As to the constructive discharge claim and the intentional infliction of emotional distress claim, both claims are based on allegations independent of any alleged violation of the contract. For example, the News could have tortiously caused O'Shea emotional distress without violating the contract. Because the plaintiff's claims are independent of the contract, they are not preempted.
 
 III
 
 16
 The News next contends that the district court erroneously denied its motion for summary judgment on the age discrimination claim. The News argues that it demonstrated that there were no material issues of fact and that it was entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The defendant contends that, with its motion for summary judgment, it submitted evidence, in the form of depositions and affidavits from Corner and Swanton (among others), that there were legitimate business reasons why O'Shea was reassigned.[1] The plaintiff, the News contends, did not submit any evidence in support of her allegations of age discrimination.
 
 
 17
 In order for the non-moving party to prevail on a motion for summary judgment, she must do more than rest on her pleadings; she must show, through specific facts, that there is sufficient evidence favoring her case for a jury to return a verdict in her favor. Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In the present case, assuming that the plaintiff has made out a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the defendant has put forward a legitimate non-discriminatory reason. The plaintiff must now demonstrate that the proffered reason was not the true reason for the employment decision. Simpson v. Midland-Ross Corp., 823 F.2d 937, 940 (6th Cir.1987).
 
 
 18
 The plaintiff alleges that her evidence is sufficient to withstand a motion for summary judgment. She cites the deposition testimony of Louis Mleczko, an official of O'Shea's union, that there have been numerous complaints of age discrimination against the News. Several of O'Shea's co-workers stated in depositions that the midnight shift is disfavored among News employees, and two of those co-workers stated that they believed assignments were made because of age. Another union official, Don Kummer, stated in a deposition that the union was trying to gather data on older employees who might have been discriminated against. O'Shea also states that she will testify that the News, and Corner specifically, knew of her late husband's medical condition.
 
 
 19
 We hold that the evidence proffered by the plaintiff (who does not make any citations to the record in her brief) was insufficient to withstand a motion for summary judgment. She did not present specific statistical evidence of the treatment of elderly employees, nor any direct evidence of intentional discrimination. Both Mleczko and Kummer admitted in their depositions that nothing had come out of any of the investigations into other people's age discrimination charges. A jury could not have found for plaintiff on the basis of the evidence presented. Summary judgment, therefore, should have been granted on the age discrimination claim.
 
 IV
 
 20
 Mrs. O'Shea appeals the decision of the lower court that the exclusive remedy provision of the Michigan Workers' Disability Compensation Act, Mich.Comp.Laws Sec. 418.131, barred her state wrongful death action seeking damages for expenses, pain and suffering, loss of consortium, emotional distress, and other damages due to the death of her husband. That provision reads in part:
 
 
 21
 The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.
 
 
 22
 O'Shea argues that this provision does not bar her claim. She first contends that under Beauchamp v. Dow Chemical Co., 398 N.W.2d 882, 892 (Mich.1986), the intentional tort exception to this provision should be interpreted as holding that an intentional tort is deemed to take place if the injury is "substantially certain" to occur because of actions the employer intended. It does not matter if the employer specifically intended or did not intend for the injuries to occur. The plaintiff contends that under this analysis, the News was substantially certain that O'Shea would suffer physical injury from working the night shift.
 
 
 23
 O'Shea also contends that even if the News's actions are not interpreted as intentional torts, one should be able to sue for non-economic damages (workers' compensation only covers economic damages) for civil rights violations that lead to death. O'Shea points out that Michigan courts have allowed damages for non-economic harms, such as emotional distress, due to civil rights violations, in spite of the exclusive remedy provision. Slayton v. Michigan Host Inc., 144 Mich.App. 535, 376 N.W.2d 664, 676 (1985). The plaintiff argues that it would be absurd to allow damages if an employer discriminates but the employee is left alive, but to deny them if the employee dies. She urges this court to expand the wrongful death cause of action to these cases.
 
 
 24
 We hold that the district court correctly dismissed the plaintiff's claim. Any argument O'Shea makes based on Beauchamp is negated by the fact that the standard announced in that case was overturned by an amendment to the statute. Section 418.131, quoted above, was enacted after Beauchamp and was meant to stiffen the standard for finding an intentional tort. One must now show that there was either a deliberate act or actual knowledge that an injury was certain to occur. No such knowledge can be found here. Even the plaintiff does not allege that the defendant intended to injure O'Shea. The most O'Shea contends is that defendant knew of her husband's medical problems and did not care. This does not meet the required standard.
 
 
 25
 As to the plaintiff's second argument, O'Shea herself acknowledges that the Michigan Supreme Court has never found an exception to the exclusive remedy provision for wrongful death suits based on actions that violate the state civil rights acts. It is not for this court to create such a cause of action.
 
 
 26
 Based on the foregoing discussion, we REVERSE the decision of the court below regarding the age discrimination claim and order that summary judgment be granted to the defendant. As to the remaining claims, we AFFIRM the decision of the district court.
 
 
 
 [1]
 The News also contends that the handicap discrimination claim should either have been dismissed on summary judgment or dismissed because the plaintiff failed to state a claim. The News argues that the plaintiff cannot now state such a claim because she does not allege or show that the News assigned O'Shea to the more difficult job because of his handicap. The plaintiff instead argues that the News discriminated against her husband by not taking into account his condition when making out the work assignments. We decline, however, to dismiss the plaintiff's claim because the Michigan Handicappers' Civil Rights Act provides that employers have some duty to accommodate a handicapper. See Mich.Comp.Laws Sec. 37.1102(2); Carr v. General Motors, 389 N.W.2d 686, 689, amended by 426 Mich. 1231, 393 N.W.2d 873 (1986)