**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0558n.06
Filed: August 4, 2006

**No. 04-1308**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| KEITH VALINSKI<br>and<br>NANCY VALINSKI,<br><br>   Plaintiffs-Appellants,<br><br>v.<br><br>DETROIT EDISON,<br><br>   Defendant-Appellee.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br>OPINION |

**Before: MOORE, SUTTON, Circuit Judges; and BUNNING, District Judge.**[*]

  **DAVID L. BUNNING, District Judge**. This is an appeal from the district court's award of summary judgment dismissing Plaintiff-Appellant's intentional tort claim against his employer, Defendant-Appellee. The primary focus of the parties' appellate briefs was the soundness of the district court's ruling on the intentional tort claim. This Court's focus, however, is subject matter jurisdiction, which is lacking. Since the district court and this Court are without authority to consider the merits of the case, the district court's decision on the merits must be vacated, and this matter remanded to the Michigan state court from which it was removed.

**I. BACKGROUND**

---

  [*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Defendant-Appellee Detroit Edison and its parent company, DTE Energy Company, operate power plants in the state of Michigan.[1]  On October 10, 1998, Detroit Edison's employee, Plaintiff-Appellant Keith Valinski, was severely injured while performing electrical maintenance.[2]  Valinski had been assigned to help with an "outage," during which repairs, maintenance, and refueling are performed on a power plant.  Plaintiff had been loaned from the Monroe, Michigan power plant where he was typically stationed to assist with this maintenance outage at another Monroe, Michigan plant.  At the time of the accident, Valinski had been working for Detroit Edison for twenty-eight years, the past twelve as an electrician.

Valinski was assigned to do electrical maintenance at one of the plant's Motor Control Centers, which houses box-like stacked electrical control units known as buckets. Plaintiff's task was to open each bucket door, move the dial switch back and forth, lubricate the switch if needed, and file a slight notch in the door's sliding latch mechanism.  The Motor Control Center was labeled "normally de-energized"; however, it was energized at the time this work was performed by Valinski, who worked without insulated tools or protective gear.  In the course of performing this maintenance work, Plaintiff saw a string hanging from a fuse clip and, mistakenly believing that the equipment was de-energized, attempted to remove the string with a screwdriver.  An explosion and fire ensured, and Plaintiff was severely burned. Defendant was later cited for a number of "serious" violations

---

[1]DTE Energy Company was also a named Defendant in the Complaint, but later dismissed by the trial court.

[2]Valinski's wife, Nancy Valinski, is also a Plaintiff and has also appealed to this Court.  As Nancy Valinski asserts a derivative claim for loss of consortium only, further reference to Plaintiff in this opinion refers to the primary claim of Keith Valinski.

of the Michigan Occupational Safety and Health Act ("MIOSHA").

Because Plaintiff sustained work-related injuries, he received benefits pursuant to Michigan's Worker's Disability Compensation Act of 1969 (the "Act"). *See* Mich. Comp. Laws § 418.101, *et seq.* He also filed this lawsuit in the Wayne County, Michigan, Circuit Court, seeking additional compensation from Detroit Edison under the Act's intentional tort exception. *See id.* § 418.131(1). Detroit Edison removed the case to the United States District Court for the Eastern District of Michigan.

Shortly after removal, the district judge ordered Defendant to show cause why the case should not be dismissed for lack of subject matter jurisdiction. Detroit Edison filed a brief in support of removal, submitting it removed the action because the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq.* (the "LMRA"), preempts Plaintiff's state-law claim, thereby providing federal question subject matter jurisdiction. That is, at the time of the accident, Plaintiff was a member of the Trades Local Union No. 223 of the Utility Workers Union of America, AFL-CIO (the "Union"). His employment was subject to the provisions of a collective bargaining agreement ("CBA") between the Union and Detroit Edison. Defendant offered that because the conditions of Valinski's employment were covered by a CBA, and the interpretation of that CBA is governed by the LMRA, Valinski's lawsuit actually presented a federal question, not a state-law claim. The district court agreed that the LMRA completely preempted Plaintiff's intentional tort claim, and so concluded it had subject matter jurisdiction, and that Defendant's removal was therefore proper.

Following discovery, Defendant moved for summary judgment, arguing Plaintiff had failed to establish the necessary elements of an intentional tort workplace claim required

by Michigan law.  The district court found that Plaintiff had failed to state a cognizable claim under the intentional tort exception of the Act, and therefore granted summary judgment in favor of Detroit Edison.  Valinski timely appealed that ruling to this Court.

## II.  DISCUSSION

### A.      *Subject Matter Jurisdiction*

Authority for a federal court to adjudicate an action is limited by the powers bestowed upon it by the United States Constitution and by statute.  *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).  The primary jurisdictional statutes are 28 U.S.C. § 1331, which confers jurisdiction where the claim arises under federal law, and 28 U.S.C. § 1332, which confers jurisdiction where the claim is between parties of diverse citizenship.   In this case, Defendant's removal was predicated upon federal question jurisdiction in that Plaintiff's claims purportedly arose under § 301 of the LMRA, rather than Michigan law.

"The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself."  *In re Lewis,* 398 F.3d 735, 739 (6th Cir. 2005).  In this case, although Valinski did not challenge the district court's authority to hear the case, the district court raised the issue *sua sponte*.[3]   "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue."  *Douglas v. E.G. Baldwin & Assocs., Inc.,* 150 F.3d 604, 606-07 (6th Cir. 1998)(citing *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)).  Thus, "[q]uite aside from

---

[3]Plaintiff did, however, ultimately formally protest federal jurisdiction over his claim in his supplemental brief filed with this Court post-oral argument.

whether the parties raise jurisdictional issues themselves – or even attempt to consent or agree to federal jurisdiction – federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction." *Id.* at 607.

Appellate courts review district court decisions regarding subject matter jurisdiction de novo. *See Kenosha v. Bruno*, 412 U.S. 507, 512 (1973); *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). Federal courts have an "independent obligation to ensure that subject matter jurisdiction exists." *Olden v. LaFarge Corp.,* 383 F.3d 495, 498 (6th Cir. 2004). "An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934). Thus, this Court must raise the issue of jurisdiction, even where the parties have not, if it finds that there was no subject matter jurisdiction for the district court to decide the case. *Kenosha*, 412 U.S. at 512.

At oral argument, both sides pointed out that jurisdiction was not identified in the issues on appeal. Defendant pointed out that Plaintiff implicitly agreed to subject matter jurisdiction in the lower court by not seeking remand or responding to the supplemental authority submitted by Defendant in response to the trial court's show cause order. However, parties cannot consent to subject matter jurisdiction, nor can they waive it. *Mitchell,* 293 U.S. at 244; *Alongi v. Ford Motor Co.,* 386 F.3d 716, 728 (6th Cir. 2004). For the Court to exercise jurisdiction because the parties stipulate the case falls under the LMRA and thereby raises a federal question would impermissibly have parties, rather than courts, deciding the substantive scope of jurisdiction. Accordingly, the Court turns to an examination of whether Plaintiff's cause of action raises a federal claim.

**B.    Complete Preemption as Providing Federal Question Subject Matter**

### *Jurisdiction*

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). To be removable based upon federal question jurisdiction, generally the complaint must affirmatively allege a federal claim. *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 6 (2003). Federal courts examine the well-pleaded allegations of the complaint for a federal question on its face, and ignore potential defenses, *id.*, "including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar,* 482 U.S. at 393. Since a plaintiff is the master of his complaint, *AmSouth Bank v. Dale,* 386 F.3d 763, 776 (6th Cir. 2004), where a choice is made to assert only a state law claim, the general rule prohibits recharacterizing it as a federal claim. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). Federal jurisdiction can therefore generally be avoided by relying exclusively on state law. *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1329 (6th Cir. 1989)(en banc).

The face of Valinski's complaint relies exclusively upon Michigan law. However, one limited exception to this general rule is "when a federal statute wholly displaced the state-law cause of action through complete pre-emption." *Beneficial Nat. Bank,* 539 U.S. at 8. This narrow exception to the well-pleaded complaint rule, otherwise known as the "complete preemption" doctrine, occurs where "Congress [has] so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life,* 481 U.S. at 63-64. The theory behind the doctrine is that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state

common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393 (quoting *Metro. Life,* 481 U.S. at 65). "[T]he congressional intent necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule." *Strong v. Telectronics Pacing Sys., Inc.,* 78 F.3d 256, 260 (6th Cir. 1996). When Congress has indicated an intent to so completely occupy the field, any ostensibly state law claim is in fact a federal claim for purposes of arising-under jurisdiction. *Beneficial Nat. Bank,* 539 U.S. at 9. "[A]ny claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar,* 482 U.S. at 393; *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983) (noting that "if a federal cause of action completely pre-empts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").

### C. Complete Preemption and the LMRA

As the party invoking removal, and since the face of Plaintiff's well-pleaded complaint does not state a federal claim, Detroit Edison carries the burden of establishing Plaintiff's cause of action is completely preempted. To do so, it relies upon the LMRA. Section 301 of the LMRA is one of but a few statutes under which the Supreme Court has recognized complete preemption. *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-11 (1985) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962); *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists & Aerospace Workers*, 390 U.S. 557, 559-61 (1968) (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456-57 (1957)). That is,

the complete preemption of state law claims by § 301 serves as the federal claim that would ordinarily appear on the face of the well-pleaded complaint. As this Court has noted, § 301 has an unusually powerful preemptive force over a claim for relief sought exclusively under state law. *Alongi v. Ford Motor Co.,* 386 F.3d at 723-24.

Section 301 of the LMRA provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The statute serves to preempt state-law claims for what are in actuality suits for violation of contracts between an employer and a labor organization. *Caterpillar,* 482 U.S. at 394.

In *Local 174, Teamsters v. Lucas Flour Co.,* the Supreme Court determined that Congress' intent in enacting this section was for federal labor law to uniformly prevail over inconsistent state law. Preemption under § 301 ensures the uniform interpretation of CBAs, as was Congress' intent. 369 U.S. 95, 103-04 (1962). Through its enactment, Congress "authorize[d] federal courts to fashion a body of federal law for the enforcement of . . . collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 451 (1957).[4]

The Supreme Court in *Avco Corp. v. Machinists* found that a suit filed in state court alleging state-law claims to enjoin a strike was properly removed to federal court based

---

[4]State courts have concurrent jurisdiction over § 301 claims, but must of course apply federal law. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502 (1962).

upon the complete preemption of § 301, which served to displace the state cause of action for violation of the CBA. 390 U.S. 557 (1968). As the High Court later expounded,

> In *Avco Corp. v. Machinists,* the Court of Appeals decided that "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts." 376 F.2d 337, 340 (6th Cir. 1967), *aff'd,* 390 U.S. 557, .... In affirming, we held that, when "[t]he heart of the [state-law] complaint [is] a ... clause in the collective bargaining agreement," *id,* at 558, ... that complaint arises under federal law: "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Board, supra,* 463 U.S., at 23....

*Caterpillar,* 482 U.S. at 394. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Elec. Workers v. Hechler,* 481 U.S. 851, 859 n.3 (1987)).

### D.     Does the LMRA Preempt Plaintiff's Intentional Tort Claim?

Authority to adjudicate the case before us requires this Court to determine whether Valinski's intentional tort claim is preempted by the LMRA. As noted by the district judge in her order upholding removal, the general governing principle in assessing preemption in the LMRA context dictates that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers,* 471 U.S. at 220. In examining this question, the district court ultimately found that since "resolution of Plaintiffs' claims will require the presiding court to interpret the parties' duties under the collective bargaining agreement,

. . . this case must be treated as a § 301 claim and that jurisdiction is therefore proper."[5] However, our *de novo* examination leads us to a different conclusion.

Since preemption under the LMRA is directed to development of consistent and uniform federal common law over CBAs, logically the initial decisions focused upon alleged state law breach of contract claims where the contract allegedly breached was the CBA. Such claims were completely preempted. *See Teamsters v. Lucas Flour Co.,* 369 U.S. 95 (1962).

Preemption under § 301 has been expanded to include state-law tort claims as well. In *Allis-Chalmers v. Lueck,* 471 U.S. 202 (1985) the Supreme Court held that § 301 preempted a state-law tort claim for bad faith in handling plaintiff's disability claims. This determination turned on the fact that the alleged bad faith was in handling obligations under a contract for disability benefits included in the employees' CBA. Because the parameters of the CBA's insurance claim payment requirement and whether it included an implied duty of good faith were matters of federal contract interpretation, the Court ruled that the state tort action was preempted. *Id.* at 215. Preemption was required because the "parties' agreement as to the manner in which a benefit claim would be handled [would] necessarily [have been] relevant to any allegation that the claim was handled in a dilatory manner." *Id.* at 218. The Court's holding was bolstered by its conclusion that this result "preserves the

---

[5]Despite this March 8, 2002, finding, the district court's later order granting summary judgment under the intentional tort exception expressly noted the court "declines to decide the much closer question of whether his claim is preempted by the LMRA." The district court adjudicated the motion utilizing solely Michigan law, even though upon initially concluding there was complete preemption, "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat. Bank.,* 539 U.S. at 8.

central role of arbitration in our 'system of industrial self-government.'" *Id.* at 219 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581 (1960)).

Several years later, in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399 (1988) the Supreme Court's attention was directed to a state-law retaliatory discharge claim for the employee's pursuit of benefits under the Illinois workers' compensation system. There, the employee was discharged for filing an allegedly false worker's compensation claim, and then filed a grievance pursuant to the CBA, which protected employees from discharge except for just cause. *Id.* at 401. While the arbitration was pending, the employee filed a civil suit, claiming that she was discharged for asserting her rights under the state worker's compensation laws. *Id.* at 402. Both the proof of and the defense to such a retaliatory discharge claim turned on purely factual questions regarding the conduct of the employee and the motivation of the employer. The Court found that the retaliation claim was independent and therefore not preempted by § 301 because resolution of the state-law claim did not require construing the CBA. *Id.* at 407.

In so holding, the *Lingle* Court noted that it had earlier emphasized that preemption "'should not be lightly inferred [in cases involving state laws creating labor standards], since the establishment of labor standards falls within the traditional police power of the State.'" *Id.* at 412 (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21 (1987)). The Court found "nothing novel" in "recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements," and explained that because the decision allows "interpretation of collective-bargaining agreements [to] remain[] firmly in the arbitral realm," the policy of fostering uniformity in the meaning of CBAs is undisturbed. *Id.* at 410-11.

-11-

Indeed, merely consulting a CBA in the course of adjudicating state law claims is not enough. *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994). *Allis-Chalmers* clarified that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ." *Allis-Chalmers,* 471 U.S. at 211, and that "it would be inconsistent with congressional intent under [section 301] to preempt state rules that . . . establish rights and obligations, independent of a labor contract." *Id.* at 212. The Supreme Court emphasized the narrowness of its decision, stating that the "scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Id.* at 220.

The analysis should be directed to "whether the [state-law cause of action] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers*, 471 U.S. at 213. Non-negotiable state-law rights are ascertained by examining "the legal character of the claim, as independent of rights under the collective bargaining agreement." *Id.* As long as federal law is the basis for interpreting CBAs, states may still provide workers with substantive rights that do not depend upon an interpretation of the CBA for their adjudication. *Lingle,* 486 U.S. at 409. "[E]ven if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409-10.

This Supreme Court precedent has evolved within this circuit in the application of

a two-part test.

> First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. . . . If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Mattis v. Massman,* 355 F.3d 902, 906 (6th Cir. 2004)(interpreting *DeCoe v. General Motors Corp.,* 32 F.3d 212, 216-17 (6th Cir. 1994)). Where a plaintiff's state-law claims cannot be directly connected to the terms of the CBA, they are not preempted. *Compare O'Shea v. The Detroit News,* 887 F.2d 683, 687 (6th Cir. 1989)(state law constructive discharge and intentional infliction of emotional distress claims not preempted because claims were "independent of any alleged violation of the contract" and state law age discrimination claim not preempted because "Michigan employees have the right not to be discriminated against ... without regard to the [CBA]'s language about employee's rights") and *Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir. 1989)(en banc)(disability discrimination claim not preempted even where employer's defense would rely on the CBA because plaintiff's claim was independent of the CBA) *with Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033 (6th Cir. 1989)(plaintiff employee's state-law claim against employer for fraud in executing the grievance procedure preempted because adjudicating the claim directly connected with the employer's adherence to the CBA) and *DeCoe v. General Motors Corp.,* 32 F.3d 212 (6th Cir. 1994)(defamation claim by employee accused of sexual harassment required consideration of CBA's detailed sexual harassment policy and required proof of an unprivileged publication, which necessarily implicated examining the CBA, and so was preempted).

Here, addressing Valinski's intentional tort claim does not require interpretation of the terms of the CBA between the Union and Detroit Edison. Valinski's state-law tort action turns on questions of fact. Specifically, because there is no direct proof of Detroit Edison's intent to injure, under Michigan law Valinski must prove intent by providing circumstantial evidence that: (1) his employer had actual knowledge, (2) that an injury was certain to occur, and (3) that his employer willfully disregarded that knowledge. *See Travis v. Dreis & Krump Mfg. Co.,* 551 N.W.2d 132, 145-46 (Mich. 1996). To prevail, Detroit Edison must rebut any showing that Valinski makes on these three elements. *Id.*

Detroit Edison fails to point to any specific provisions of the CBA that the court would be required to interpret to resolve these questions of fact. In its supplemental filing on the issue of subject matter jurisdiction, Defendant submits that Plaintiff has sought to avoid the preemption of § 301 by artfully pleading around those matters that would necessitate interpretation of the CBA to resolve the essence of Plaintiff's claim; namely, job assignment, training, safety and dispute resolution all provided for by the CBA. But despite Defendant's protests, interpreting these provisions of the CBA is unnecessary for Plaintiff to pursue an intentional tort claim.

The CBA states that "[s]hould any disagreement arise between any employee ... covered by this Agreement and the Company, it shall be deemed a grievance," and provides procedures for how a grievance should be filed and how it should proceed to arbitration. However, such a broad grievance provision in the CBA in *Lingle* did not preempt the employee's state tort claim. *See Lingle*, 486 U.S. at 401-02.

The CBA also addresses obligations related to workplace safety conditions:

The Company and Union will cooperate in placing in effect and maintaining

safety rules and practices. These safety rules and practices and the OSHA and MIOSHA law governing health and safety shall be complied with by the Company, the employees, and the Union.... As safe and comfortable working conditions as practicable under conditions existing at the time will be maintained. The Company is committed to and will continue to furnish properly fitting safety clothing and equipment as customarily furnished.

But as the Court found in *Lingle*, even if a grievance filed by the Plaintiff for violation of the CBA's safety provisions would involve consideration of the same facts as Plaintiff's state tort suit, this has no bearing on the independence of the state claim for preemption purposes unless the resolution of the state claim requires interpretation of the CBA. The workplace safety conditions identified above are irrelevant to consideration of whether the Defendant actually knew that an injury was certain to occur and willfully disregarded this knowledge.

Finally, the CBA contains provisions relating to training advisory groups, to the placement of incapacitated employees, and to a long-term disability benefits plan. Aside from referencing these provisions generally, Defendant points to no particular connection between these specific terms of the CBA and the necessity for their interpretation in order to adjudicate Plaintiff's state-law intentional tort claim.

Thus, the CBA's general discussion of safety conditions is insufficient to bring this claim within the realm of preemption under the LMRA where resolution of the claim does not turn on any consideration of the terms of the CBA. *See Lingle*, 486 U.S. at 409-10. The right being asserted by Plaintiff in this case is created by state law, not the CBA. In *Allis-Chalmers*, the Supreme Court explained that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." 471 U.S. at 213.

The Court applied this principle in *United Steelworkers of America v. Rawson*, where it found that a wrongful death suit against a union based on its negligent safety inspections was preempted because the union's duty to perform inspections arose from the CBA and not from the general duty of reasonable care owed by everyone. 495 U.S. 362 (1990). Michigan law specifically exempts intentional torts from the exclusive remedy under its Worker's Compensation Disability Act, *see* Mich. Comp. Laws § 418.131, and the CBA at issue mentions nothing about Detroit Edison's liability to its employees for intentional torts. "It would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lingle,* 486 U.S. at 410 n.10 (quoting *Caterpillar*, 482 U.S. at 394-95). Moreover, because resolution of the claim does not require any reference to the terms of the CBA, the goal of uniformity in CBA interpretation will not be upset by allowing Plaintiff's state-law claim to go forward.

### III. CONCLUSION

Federal courts must have subject matter jurisdiction to hear the cases that come before them. As the Supreme Court only earlier this term again emphasized, "It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should . . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Marshall v. Marshall,* 547 U.S. —, 126 S. Ct. 1735, 1741 (2006)(quoting *Cohens v. Virginia,* 6 Wheat. 264, 404 (1821)).

In this case, Plaintiff's state law cause of action was not preempted by the LMRA, and so there is no basis for federal jurisdiction. Therefore, the district court's award of

summary judgment is hereby VACATED.  Its March 8, 2002, order as to subject matter jurisdiction is hereby REVERSED and this matter REMANDED to the district court for further proceedings consistent with this opinion.